ON MOTION FOR REHEARING

ON WRIT OF CERTIORARI

LAMAR, Justice,
for the Court:
¶ 1. The State’s motion for rehearing is granted. The previous opinions are withdrawn and these opinions are substituted therefor.
*2 ¶2. Jaison Harness was convicted of aggravated DUI and sentenced to twenty-five years in prison, with ten years suspended and five years of supervised probation. Harness appealed his conviction, and the Court of Appeals affirmed.[1] This Court granted Harness’s petition for writ of certiorari and, finding no error, we affirm his conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 3. On the evening of August 22, 2003, Jaison Harness and Clyde Hampton, traveling in separate vehicles, were involved in a head-on collision. Officer Natyyo Gray was one of the first officers on the scene. Officer Gray testified that he observed Hampton in his vehicle and that he appeared to be “lifeless.” He observed Harness standing beside his vehicle. Harness told Officer Gray that he had just left a “get together,” and that he had been drinking, but that he was not drunk. Officer Gray testified that he thought Harness’s eyes appeared “a little glazed” and that Harness would “move further back” every time Officer Gray would take a step around the car. Harness eventually stated that he was hurting and felt a little dizzy, and he was taken to the hospital. Officer Gray observed an unopened bottle of brandy in the passenger floorboard of Harness’s vehicle and several open beer cans in the driver’s floorboard of Hampton’s vehicle.
¶ 4. Officer Joseph Cotton, another officer at the scene, testified that Hampton and Harness were taken to separate hospitals, and that he went and retrieved blood samples from both men because alcohol was present at the scene of the accident. Hampton died early the next morning from his injuries.
¶ 5. The state crime laboratory received Harness’s blood sample on October 7, 2003.[2] The first analysis of the sample was performed on October 16, 2003, resulting in blood-alcohol readings of .1176 and .1234.[3] But because these results were not within “plus or minus two percent” — the range allowed by the lab’s operating procedures — they were not reported to the State, and a second test had to be conducted. The second analysis of Harness’s blood sample was performed on October 23, 2003, resulting in blood-alcohol readings of .1175 and .1170. A report listing a blood-alcohol level of .11 was then sent to the Jackson Police Department. The report noted:
This report represents the analytical results of the examinations performed on the items of evidence in this case.... Should additional material be required for court purposes, please contact the laboratory as soon as possible. All samples submitted for toxicological examinations will be routinely disposed of six months after analyses are completed. If you anticipate that this evidence will be needed, please contact the laboratory to arrange its return.
(Emphasis added.)
¶ 6. On April 8, 2004, Harness was indicted for driving under the influence and causing death in violation of Mississippi Code Sections 63-11-30(1) and 63 — 11— 30(5). On July 22, 2004, Harness received a copy of the crime lab report from the district attorney’s office and filed a motion for discovery, requesting, among other *3 things, his blood sample for independent testing. When the State failed to produce the blood sample, Harness filed a motion to compel on September 30, 2004, and a hearing on the motion was set for November 5, 2004. But the crime lab had disposed of Harness’s blood sample a week after he had filed his motion to compel.
¶ 7. Harness filed a motion to dismiss the indictment, arguing that the crime lab’s destruction of his blood sample denied him the right to an independent test which might have disclosed exculpatory evidence. After a hearing, the trial judge denied the motion, reasoning that there was no evidence of bad faith by the State and that defense counsel also was made aware that the sample would be destroyed within six months when he received the report from the crime lab.
¶ 8. After a trial, the jury found Harness guilty of aggravated DUI, and the trial court sentenced Harness to twenty-five years in prison, with ten years suspended and five years of supervised probation. Harness appealed, arguing five issues:
(1) that the trial court erred when it admitted the expert testimony of Officer Joseph Cotton, the State’s accident re-constructionist; (2) that the trial court erred when it allowed a diagram drawn by Cotton to be admitted into evidence; (3) that the trial court erred in denying Harness’s motion to dismiss the indictment; [4] (4) that the State failed to establish an adequate evidentiary foundation for the blood sample; and (5) that the trial court erred when it disallowed evidence of a release and settlement Harness received from Hampton’s insurer, as well as evidence of a complaint filed against Harness alleging the negligence of a second, unknown individual.
The case was assigned to the Court of Appeals, which affirmed the trial court on all issues.[5]
¶ 9. This Court granted Harness’s petition for writ of certiorari, in which he argued the same five issues. In our original opinion, we addressed issue three only — the trial court’s denial of Harness’s motion to dismiss — and reversed the Court of Appeals. We held that the standard laid out by the United States Supreme Court in California v. Trombetta[6] was insufficient to determine whether a defendant had been deprived of his due-process rights in Mississippi. We found that Harness was entitled to independent testing of his blood sample,[7] and that the State’s failure to honor his timely request for the sample violated his due-process rights.
*4 ¶ 10. The State filed a motion for rehearing, asking this Court to clarify whether this heightened due-process standard applied only in DUI cases, or in all cases involving destruction of evidence. The State urged this Court to return to the Trombetta standard, as our statute allowing for independent testing of a blood sample provides no more protection to DUI defendants than that already provided to all defendants under Uniform Circuit and County Court Rule 9.04.[8] After further review, we find errors of both law and fact, and we withdraw our original opinion and substitute this opinion, affirming the trial court and the Court of Appeals. Pursuant to Mississippi Rule of Appellate Procedure 17(h), we limit our review on certiorari to Harness’s third assignment of error.
ANALYSIS
¶ 11. “A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed.”[9] In Trombetta,[10] the United States Supreme Court established a test for determining whether a defendant’s due-process rights have been violated in situations where physical evidence has been destroyed. There, several defendants filed motions to suppress the results of their Intoxilyzer breath tests because the arresting officers had failed to preserve the samples.[11]
¶ 12. In finding for the State, the Supreme Court held that “[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect’s defense.”[12] In order to “play a significant role in the suspect’s defense,” the evidence “must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.”[13] The Court found that “the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial.”[14]
¶ 13. In Arizona v. Youngblood,[15] the United States Supreme Court explicitly[16] added a bad-faith factor to the Trombetta test: “We therefore hold that unless a criminal defendant can show bad faith on *5 the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.” This Court has applied the three-factor standard established in Trombetta and Young-blood in several cases.[17]
¶ 14. Here, Harness had a right to test the blood sample taken by the State. Uniform Circuit and County Court Rule 9.04 states, in pertinent part:
[T]he prosecution must disclose to each defendant or to defendant’s attorney, and permit defendant or defendant’s attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (5) Any physical evidence and photographs relevant to the case or which may be offered in evidence ...
(Emphasis added.) But now that the blood sample has been destroyed, Harness must show that it had exculpatory value which was apparent before it was destroyed, that he would be unable reasonably to obtain comparable evidence, and that the State acted in bad faith in order to prevail on his due-process claim. We find that he has not made the first showing — that the blood sample had exculpatory value before it was destroyed — and we therefore affirm the trial court’s denial of his motion to dismiss the indictment.
¶ 15. As already discussed, the crime laboratory tested Harness’s blood sample four times on two occasions. The first two tests resulted in blood-alcohol readings of .1176 and .1234. These results were not reported to the State because the results were outside the standard deviation set by the lab’s internal operating procedures. A week later, the lab conducted two more tests which resulted in blood-alcohol readings of .1175 and .1170.
¶ 16. John Stevenson, the forensic scientist who tested Harness’s blood, testified at length concerning the quality controls implemented by the lab to ensure accurate results, including control samples which the lab runs with each batch of tests. Stevenson also testified that, simply because the first tests had produced readings outside the standard deviation did not mean they were inaccurate. Specifically, Stevenson stated:
The batch itself was good. The batch itself was run along with controls and other data. That doesn’t mean that the batch wasn’t good. That just means that this particular sample was outside the normal standard deviation, which is part of our process. Due to the type of sample we are running, could be blood, urine, or vitreous, that sample has some variances to it. So if it’s outside their range set up by the Mississippi Crime Laboratory then that sample is re-ran [sic].
Stevenson was subjected to cross examination, both at the hearing on the motion to dismiss and at trial.
¶ 17. Thus, Harness’s blood sample was tested four times; and, even giving him the benefit of the lowest result— .1170 — his blood-alcohol level was well over the legal limit. As we stated in Tol-bert v. State: “‘the mere possibility the evidence might aid the defense does not satisfy the constitutional materiality standard.’ ”[18] We find that Harness has failed *6 to meet the first prong of the Trombetta test, as the blood sample did not “possess an exculpatory value that was apparent” before it was destroyed.[19]
¶ 18. Because Harness has failed to prove the first prong of the Trombetta test, we find it unnecessary to discuss the remaining two prongs (i.e., that he would be unable reasonably to obtain comparable evidence, and that the State acted in bad faith). But we feel compelled to address the dissent’s allegation that “despite the trial judge’s suggestions to the contrary, the crime lab personnel were under no compulsion to heed a request to preserve the evidence from anyone but the prosecutor.” (Diss. Op. ¶ 32). John Stevenson clearly testified that the lab would have preserved the sample if asked to do so by defense counsel:
Q. Just one question. If you had received such a letter from a defense counsel asking that the sample be preserved, what steps under the policies and procedures of the Crime Lab would you have taken?
A. The process would have been then taking that item of evidence from the box itself where it was stored and taking it out and putting it in a hold box, an implied consent toxicology hold box within our tox freezer.
Q. So you would have then preserved it. Am I correct?
A. That is correct.
Q. Until further information from the submitting agency?
A. That’s correct.
Q. It didn’t — would it require — well, that’s all. If you got a letter from a defense lawyer saying, please preserve the sample, you would have preserved it until further instruction from the submitting agency?
A. That is correct, sir.
Moreover, the dissent’s lengthy discussion of the State’s affirmative duty to “prosecute responsibly” — a basic principle not disputed by any Justice on this Court — is simply unnecessary for our analysis. Even if we were to agree that the State’s actions were tantamount to bad faith, Harness still would not prevail, as he must meet all three prongs of the Trombetta test in order to have the blood sample suppressed. And as we discussed above, Harness is unable to show that the blood sample had exculpatory value that was apparent before it was destroyed. So we find that Harness’s due-process rights were not violated when the trial court denied his motion to dismiss the indictment and allowed the State to introduce the results from the blood analysis at trial.
CONCLUSION
¶ 19. The trial court did not err when it denied Harness’s motion to dismiss the indictment. Harness has failed to show that the blood sample had exculpatory value before it was destroyed, and we find no denial of due process in this case. We therefore affirm the decisions of the trial court and the Court of Appeals.
¶ 20. CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED AND FIVE (5) YEARS OF SUPERVISED PROBATION WITH FIFTEEN (15) TO SERVE AND CREDIT GIVEN FOR TIME SERVED, AFFIRMED.
*7 WALLER, C.J., CARLSON, P.J., RANDOLPH AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., DICKINSON AND CHANDLER, JJ.

. Harness v. State, 58 So.3d 12 (Miss.Ct.App.2009).

. The crime lab also received Hampton's blood sample on October 7, 2003. Hampton’s blood-sample analysis resulted in a blood alcohol reading of .03.

.Each sample is tested in duplicate as part of the crime lab's methodology.

. Harness also had filed a motion to suppress the results from the blood-sample analysis, and he argued on appeal that the trial court’s denial of that motion was in error as well. But in that motion, Harness argued that the blood evidence should be suppressed because it was illegally seized by authorities. Harness does not reiterate that argument on appeal.

. Harness v. State, 58 So.3d 12 (Miss.Ct.App.2009).

. California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

. We relied on Mississippi Code Section § 63-11-13 (Rev.2004), which states:
The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person of his choosing administer a test, approved by the state crime laboratory created pursuant to section 45-1-17, in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer.

. Uniform Circuit and County Court Rule 9.04 states, in pertinent part:
A. [T]he prosecution must disclose to each defendant or to defendant’s attorney, and permit defendant or defendant’s attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution: (5) Any physical evidence and photographs relevant to the case or which may be offered in evidence ....

. Trombetta, 467 U.S. at 485, 104 S.Ct. 2528.

. Id.

. Id. at 482-83, 104 S.Ct. 2528.

. Id. at 488, 104 S.Ct. 2528 (emphasis added).

. Id. at 489, 104 S.Ct. 2528.

. Id. at 491, 104 S.Ct. 2528.

. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

. The Trombetta Court had discussed the lack of bad faith by the State in destroying the breath samples, even though it did not mention it as the third factor to the test. Trombetta, 467 U.S. at 488, 104 S.Ct. 2528.

. See e.g., State v. McGrone, 798 So.2d 519, 522-23 (Miss.2001); Taylor v. State, 672 So.2d 1246, 1271 (Miss.1996); Holland v. State, 587 So.2d 848, 869 (Miss. 1991); Tolbert v. State, 511 So.2d 1368, 1372-73 (Miss.1987).

. Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987) (quoting United States v. Binker, *6 795 F.2d 1218, 1230 (5th Cir.1986)).

. Trombetta, 467 U.S. at 489, 104 S.Ct. 2528.