KITCHENS, Justice,
dissenting.
¶ 25. I find that affirmance of the judgment of the Warren County Circuit Court offends the Fourteenth Amendment of the United States Constitution and Article 3, Section 14, of the Mississippi Constitution. Failure of the State to ensure preservation of the blood sample used by the State to secure Whitaker’s conviction violated his fundamental right to due process of law. Respectfully, I dissent.
¶ 26. The circuit court heard arguments on Whitaker’s Motion to Suppress and to Compel Production of Blood Sample on September 14, 2012. On the morning of the hearing, though the Motion to Suppress and Compel Production of Blood Sample had been filed by Whitaker on August 15, 2012,[1] the District Attorney of *340 Warren County informed defense counsel that the blood sample was no longer available. The State expressed its understanding that the policy of the Mississippi Crime Laboratory was “to retain those items for six months, [and] after six months to destroy those items,” and that Whitaker’s blood sample had been destroyed pursuant to that policy. David Lockey, the State’s expert in forensic toxicology who had tested Whitaker’s blood sample, testified that “[a ]fter testing, the sample will be put ... in a storage box ... in our toxicology freezer ... for six months or longer, a minimum, of six months.” (Emphasis added.) No evidence in the record establishes precisely when the sample was destroyed, but its destruction occurred at some time prior to the motion hearing on September 14, 2012.
¶ 27. A deprivation of liberty implicates a person’s fundamental right to due process of law under the United States Constitution and the Mississippi Constitution. U.S. Const, amend. XIV; Miss. Const, art. 3, § 14. The United States Supreme Court has held that due process of law requires that the prosecution turn over to the accused all evidence “material either to guilt or to punishment” that is “favorable to an accused upon request.” Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the State is under an obligation only to preserve evidence “that might be expected to play a significant role in the suspect’s defense,” meaning that “evidence must both [1] possess an exculpatory value that was apparent before the evidence was destroyed, and [2] be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.” California v. Trombet-ta, 467 U.S. 479, 488-89,104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Further, a criminal defendant is required to “show bad faith on the part of the police” in order to establish a deprivation of due process. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
¶28. Harness v. State, 58 So.3d 1, 3 (Miss.2011), involved a circumstance analogous to the present one. Harness was indicted for driving under the influence and causing a death pursuant to Mississippi Code Sections 63-11-30(1) and 63-11-30(5). Id. at 2. Harness filed both a motion for discovery and a motion to compel, seeking the blood sample which was to be used by the State as evidence against him for independent testing by an expert of the defendant’s choosing. Id. at 2-3. This Court held that Harness failed under the first prong of Trombetta,: “Harness has failed to show that the blood sample had exculpatory value before it was destroyed, and we find no denial of due process in this case.” Id. at 6.
¶ 29. I dissented in Harness, 58 So.3d at 7 (Kitchens, J., dissenting), and respectfully maintain today that the case was wrongly decided:
The preservation of evidence is especially important when the evidence in question is a blood sample taken from a person suspected of driving under the influence. In such cases, a defendant in Mississippi’s state courts has a statutory right independently to test the sample for blood alcohol content. Miss.Code Ann. § 63-11-13 (Rev. 2004).[2] This *341 statutory right is firmly rooted in due process concerns, to ensure the accused’s ability to mount a defense and thoroughly confront the evidence against him. As our case law demonstrates, Mississippi law affords a greater level of due process protection than the standards provided in Trombetta and its progeny.
Id. at 9. Moreover, this Court has held that “a respondent charged with the operation of a motor vehicle while under the influence of intoxicating liquor is entitled to a reasonable opportunity to attempt to procure the seasonable taking of a blood sample for test purposes.” Id. at 9 (quoting Scarborough v. State, 261 So.2d 475, 478 (Miss.1972)). As such, “the unreasonable denial of defendant’s request for a blood test pursuant to Mississippi Code Section 68-11-18 amounts to a denial of due process of law.” Harness, 58 So.3d at 9 (Kitchens, J., dissenting). My Harness dissent concluded that “the unreasonable denial of a defendant’s request for an independent blood test under the same statutory provision discussed in Scarborough also will amount to a denial of due process of law.” Id. at 9 (emphasis in original).
¶ 30. While the United States Supreme Court established a floor in Trombetta and Youngblood, Mississippi’s ceiling, established by statute and by decisions of this Court, imposes upon our prosecutors a vigorous duty to ensure that evidence sought, or likely to be sought, by an ae-cused for independent testing is not destroyed:
While these facts, taken together, may not demonstrate a specific intent to destroy the blood sample, the district attorney’s indifference to the defendant’s efforts to obtain independent testing, which is both a statutory and constitutional right, is tantamount to a willful disregard of the affirmative duty to preserve evidence that “might be expected to play a significant role in the suspect’s defense.”
Id. at 10 (citing Tolbert v. State, 511 So.2d 1368, 1372 (Miss.1987); Trombetta, 467 U.S. at 489, 104 S.Ct. 2528). As I additionally observed in my Harness dissent, the State’s “affirmative duty to prosecute responsibly” is undergirded by Mississippi Rule of Professional Conduct 3.8(d). Harness, 58 So.3d at 10 (Kitchens, J., dissenting). Rule 3.8(d) imposes a special duty on the prosecutor to “make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense.... ” Miss. R. Prof 1 Conduct 3.8(d); see also URCCC 9.04(A)(5), (6). The comment to Rule 3.8 explains that “[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence.” (Emphasis added.)
*342 ¶ 81. While I do not suggest that the State’s failure to ensure the preservation of Whitaker’s blood was intentional, I view the prosecutor’s inattention to that task in the same way that I expressed such thoughts in Harness:
[t]hough the prosecutor in this case may not have set out deliberately to deprive the accused of his right to independent testing, his error in failing to undertake steps to preserve the defendant’s right to such testing produced the same result as if he had purposely caused the evidence to be destroyed without the defendant’s being allowed to test it.
Harness, 58 So.3d at 10 (Kitchens, J., dissenting).[3] If the State had notice of Whitaker’s intention independently to test his blood sample, then the State had an affirmative duty to ensure its preservation, so that an independent analysis could have been conducted by Whitaker. Here, it appears that Whitaker, like Harness, first filed a motion for discovery. Three months later, when it had become evident to the defense that the blood sample to be used against Whitaker at tidal was not forthcoming from the State, a motion to compel was filed. Not until the morning of trial, nearly one month after Whitaker had filed the motion to compel, did the district attorney inform defense counsel that the sample had been destroyed by the State Crime Laboratory.
¶ 32. The district attorney stated at the motion hearing that it was his understanding of the Crime Laboratory’s policy that samples were to be maintained for six months before destruction. The expert from the Crime Laboratory testified at trial that samples were to be maintained for at least six months following completion of analysis before destruction. Otherwise, the record is devoid of any documentation of such a Crime Laboratory policy. It is unclear from the record whether Whitaker and/or defense counsel were aware of this policy. In Harness, the laboratory report bore notice that “[a]ll samples submitted for toxicological examination will be routinely disposed of six months after analyses are completed.” Id. at 7 (emphasis added). Here, the laboratory report did not contain such a notice. The record reflects that the State’s examination of the sample was completed on December 19, 2011, five months before Whitaker filed his Motion for Discovery, in May 2012. Thus, the district attorney appears to have been on notice for at least a full month that destruction of the sample was imminent when Whitaker notified him of his intention independently to test the blood sample.[4]
*343 ¶ 33. Unintentional or otherwise, the failure on the part of the district attorney to ensure that the Crime Laboratory maintained Whitaker’s blood sample for independent testing does not comport with our requirement that prosecuting attorneys function as “ministers of justice.” During the final days before the Crime Laboratory was scheduled to destroy the blood sample, the maintenance of the sample for the purpose of independent testing by Whitaker, accused of driving under the influence of intoxicating liquor, had the potential of making the difference between liberty and a lengthy incarceration. This Court ought to require more of its “ministers of justice.” Adversarial advocacy for the State, though legitimate, should travel hand-in-hand with fair play in such circumstances as these, where the rights of the accused must be guarded by all concerned. But in the absence of a potentially exculpatory, independent test of his blood, Whitaker was faced at trial with the State’s analysis, and only that, of a sample of dubious efficacy.[5]
¶ 34. The majority highlights that Whitaker’s “blood was not taken pursuant to the Implied Consent Act.” I agree that Whitaker’s blood was not taken pursuant to the procedures prescribed in Mississippi Code Section 63-11-7, since the investigating officer chose to obtain a search warrant. But the affidavits for search warrant, States’ Exhibits 8 and 9, sworn by the peace officer seeking the blood sample and signed by a Warren County Justice Court judge, cited “63-11-30” as the statutory provision pursuant to which Whitaker was being investigated. The State indicted and prosecuted Whitaker under Mississippi Code Sections 63-11-30(1) and 63-11-30(5), and he was convicted under those sections. It cannot, therefore, be said that Whitaker’s blood was not taken pursuant to the Implied Consent Act, or, at the very least, with that body of law in mind. The document utilized by the investigating officer to present to the magistrate a showing of probable cause, the means by which Whitaker’s blood ultimately was obtained, explicitly referred to the very sections of the Implied Consent Act of which the officer believed Whitaker to be in violation.
¶ 35. Deprivation of liberty without full due process of law mandates reversal. I would remand, first, for a determination of precisely when Whitaker’s blood sample was destroyed by the Crime Laboratory. If the trial court were to determine that the sample was destroyed after Whitaker had filed his Motion for Discovery in May 2012, Whitaker would be entitled to a new trial. At that new trial, if the State’s blood analysis were deemed admissible by the trial court, I would require that the jury be given the negative inference instruction I recommended in Harness:
*344 The Court instructs the jury that if you find from the evidence that the State has failed to preserve any physical evidence whose contents or quality are in question in this case, and which the defendant could have had tested or analyzed by a qualified expert of his choosing, but for the State’s having failed to cause that evidence to be preserved for independent, expert testing or analysis by the defense, then you may infer that such testing or analysis would have been favorable to the defendant and unfavorable to the State. However, if you choose to make the negative inference against the State, this would not necessarily result in the defendant’s acquittal. If other evidence on this issue has been presented to you which either establishes the fact or resolves the issue to which the missing evidence is relevant, then you must weigh that evidence along with all other evidence. If, after considering all of the evidence, including the negative inference, you unanimously believe that the defendant has been proved guilty, beyond a reasonable doubt, then your verdict shall be, “We, the jury, find the defendant guilty.”
Harness, 58 So.3d at 12 (Kitchens, J., dissenting).
¶ 36. For these reasons, I respectfully dissent.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.

. Whitaker’s counsel previously had filed, on May 7, 2012, a Motion for Discovery, requesting "complete disclosure and discovery” pursuant to Uniform Circuit and County Court Rule 9.04. Rule 9.04(A), subsections (5) and (6), require the prosecution to disclose to the defendant’s attorney "any physical evidence” and "any exculpatory material concerning the *340 defendant” in the "possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution.” The defendant’s Motion to Compel followed on August 15, 2012.

. Mississippi Code Section 63-11-13 (Rev. 2013) provides that:
The person tested may, at his own expense, have a physician, registered nurse, clinical laboratory technologist or clinical laboratory technician or any other qualified person *341 of his choosing administer a test, approved by the state crime laboratory created pursuant to Section 45-1-17, in addition to any other test, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by such arrested person shall not preclude the admissibility in evidence of the test taken at the direction of a law enforcement officer.
As I noted in Harness, ‘'[ajlthough the final sentence provides that a violation of this right will not preclude the admission of the State's test results, we repeatedly have held that rules governing the admissibility of evidence are strictly within the province of the courts and are not a legislative matter.” Harness, 58 So.3d at 9 n. 21 (Kitchens, J., dissenting) (citing Deeds v. State, 27 So.3d 1135, 1141 (Miss.2009); Whitehurst v. State, 540 So.2d 1319, 1323 (Miss. 1989)).

. That said, if the Crime Laboratory destroyed the evidence prior to the filing of Whitaker’s Motion for Discovery or his Motion to Compel, due process might have been satisfied, as the State would have had no notice of his intention independently to test the sample. If the blood sample here was destroyed after the filing of Whitaker's motions, then the State’s failure to ensure its preservation, having notice of Whitaker's desire independently to test it, amounted to a violation of his right to due process of law. Nevertheless, the date the Crime Laboratory destroyed the blood sample does not appear in the record, though it is highly germane to this analysis. In Harness, for instance, it was clear that Harness’s blood sample was destroyed one week after his motion to compel was filed and served on the district attorney and three months after his motion for discovery “notified the district attorney ... that he desired a blood sample for independent testing." Harness, 58 So.3d at 7, 10 (Kitchens, J., dissenting). My reversal of this case would depend on a determination by the trial court of the date on which Whitaker's blood sample was destroyed.

. The Crime Laboratory may have broken with its own policy of maintaining samples for at least six months.

. Indeed, the exigency of the situation was exacerbated by the fact that the blood sample, for six weeks between October 21, 2011, and December 7, 2011, was retained in the police evidence locker until it was transported to the Crime Laboratory for analysis. The State’s expert in forensic toxicology testified that "there is a slight possibility” that failure to refrigerate for such a period of time could degrade the blood sample if it was not "stored in a manner or drawn and stored in the manner recommended by the kit [used by the nurse to take and preserve the blood sample].” The anticoagulant and preservatives contained in the kit are, according to the expert, designed to prevent the blood from breaking down; but if the blood does break down, ”[t]here is a possibility of bacteria-produced ethanol within a container, within a sealed tube, under the right circumstances, such as heat and other factors.” An independent analysis of Whitaker’s blood sample might, had it been preserved, have demonstrated a problem with the State’s maintenance of the blood sample. With its destruction, any possibility of exculpation on the basis of the sample forever was lost.