923 So.2d 1039 (2005)
Donald A. WILSON a/k/a Donald Albert Wilson, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00196-COA.
Court of Appeals of Mississippi.
October 4, 2005.
Rehearing Denied January 3, 2006.
Certiorari Denied March 16, 2006.
*1040 Patrick Joseph McNamara, Jennifer P. Fortner, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On November 14, 2003, a jury in the Warren County Circuit Court found Donald A. Wilson guilty of murder, aggravated assault and arson. Wilson was sentenced to serve a life sentence for the murder count, twenty years on the aggravated assault count, and three years on the arson count, all sentences to run consecutively to each other and served in the custody of the Mississippi Department of Corrections. Wilson subsequently filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied. From this conviction, Wilson appeals to this Court asserting the following issues: (1) he was improperly denied the right to fully cross-examine the State's expert witness; (2) the trial court erred in allowing for the videotaped deposition of Dr. Phillip Meredith; (3) his initial appearance was impermissibly delayed; (4) he was denied his right to counsel; and (5) his statements to law enforcement officers were not knowing and voluntary. Finding no error, we affirm.

FACTS
¶ 2. On August 19, 2001, investigators from the Warren County Sheriff's Department responded to a call regarding a shooting. Upon arriving on the scene, investigators found a black pickup truck on fire, with the body of Joseph Hartzog inside. Hartzog, although burned, died from gunshot wounds to his head and chest.
¶ 3. Patricia Wilson, Wilson's ex-wife, testified that she and Hartzog were at her house vacuuming Hartzog's truck when Wilson arrived. After conversing with Patricia, Wilson drew a gun and shot Patricia in the stomach. As Patricia fled, she heard other shots being fired. Two of Patricia's neighbors, Margaret Melton and Christopher Melton, both saw Wilson throw burning rags into the black pickup truck.

I. WAS WILSON DENIED HIS RIGHT TO CROSS-EXAMINE THE STATE'S EXPERT WITNESS?
¶ 4. In his first issue on appeal, Wilson argues that he was denied his right *1041 to cross-examine the State's expert witness, Dr. Phillip Meredith. Specifically, Wilson contends that his defense was prejudiced because he could not cross-examine Dr. Meredith regarding Wilson's medical records from the Veteran's Administration (VA). According to the record, there was an agreed order to produce Wilson's VA records, signed June 26, 2002. As Dr. Meredith was unable to testify at trial due to a conflict, his testimony was elicited through a video deposition on October 20, 2003, during which Wilson was able to cross-examine Dr. Meredith. Dr. Meredith, prior to his video deposition, also requested a copy of Wilson's medical records. Dr. Meredith did not receive these records, a fact which he stated in his video deposition. The VA records were produced on the second day of Wilson's trial, November 12, 2003.
¶ 5. Wilson's expert witness, Dr. Wood Hiatt, was able to review the VA records prior to his testimony. After reviewing the records, Dr. Hiatt changed his opinion of Wilson's mental status at the time of the crime. Wilson states that, if Dr. Meredith had been able to see the VA records, he might have reached a different conclusion as to whether Wilson was sane at the time of the crime. During a hearing on November 7, 2003, on the motion to exclude Dr. Meredith's testimony, the trial court, in allowing Dr. Meredith's testimony, found as follows:
But the Court  he testified  I believe he [Dr. Meredith] testified it wouldn't affect his decision [concerning Wilson's sanity]; he had what he needed. That's a matter of weight of his testimony, whether he had those records, whether they would have made a difference or not. It doesn't go to the exclusion of testimony. It goes to the weight of the testimony.
¶ 6. The jury heard testimony from Dr. Meredith, Dr. Hiatt, police officers, Patricia Wilson, and others, ultimately finding Wilson guilty of the crimes charged. It was within their province to accept or reject testimony from witnesses. Mangum v. State, 762 So.2d 337 (¶ 12) (Miss.2000). We fail to find merit with this issue.

II. DID THE TRIAL COURT ERR IN ALLOWING FOR THE VIDEOTAPED DEPOSITION OF DR. PHILLIP MEREDITH?
¶ 7. In his second issue, Wilson argues that the trial court erred in allowing the video deposition of Dr. Meredith. Wilson states that there is no substitute for having the expert physically on the stand at trial. However, due to numerous continuances, a change of venue, and scheduling conflicts, Dr. Meredith was unable to testify at trial. The trial court stated as follows:
[T]he Court thinks there's no reasonable way to obtain his [Dr. Meredith] presence in the state during that week. So I'm going to declare him unavailable. The only alternative would be to postpone the trial, and this case has been postponed and postponed for two years now. And to come up with a further postponement would, to me, not meet the ends of justice .... the Court is going to order that the deposition be taken here in the courtroom and that the defendant be available to consult with counsel and see the deponent face to face as he would in a trial, that it be a video deposition, and I will be available to answer objections when it's scheduled.
¶ 8. We cannot find that the trial court erred in allowing Dr. Meredith to testify through video deposition; thus, we find this issue lacks merit.

*1042 III. WAS WILSON'S INITIAL APPEARANCE IMPERMISSIBLY DELAYED?

IV. WAS WILSON DENIED HIS RIGHT TO COUNSEL?

V. WERE WILSON'S STATEMENTS VOLUNTARY?
¶ 9. In his third, fourth, and fifth issues, Wilson argues that his initial court appearance was impermissibly delayed, he was denied his right to counsel, and his statements were not voluntary. In regards to his initial appearance, Wilson more specifically states that if the officer had not delayed taking Wilson before the judge, then Wilson would not have made incriminating statements about his crimes. Pursuant to Uniform Circuit and County Court Rule 6.03, anyone in custody is entitled to an initial appearance "without unnecessary delay and within 48 hours of arrest ...." We note that Wilson's initial appearance was within forty-eight hours of his arrest.
¶ 10. Even if the initial appearance occurs within forty-eight hours of arrest, a defendant's constitutional rights have been violated if he can show that the hearing was delayed for an impermissible purpose, such as "gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." County of Riverside v. McLaughlin, 500 U.S. 44, 66, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). However, where the trial court has overruled a motion to suppress the confession of a defendant, this Court will reverse the trial court's decision only if the trial court's ruling was clearly erroneous or contrary to the overwhelming weight of the evidence. White v. State, 495 So.2d 1346, 1347 (Miss. 1986).
¶ 11. Deputy Jay McKenzie testified that, as he was preparing to transport Wilson to the initial appearance, Wilson told him that he wanted to ask McKenzie some questions and make a statement. Wilson then signed a Miranda rights waiver. According to a partial transcript of Wilson's statement, McKenzie told Wilson on more than one occasion that he was entitled to have an attorney present, even if he couldn't afford one. Wilson responded in the negative, saying, "What I'm trying to say is I done wrong and I don't want this carried out any length of time.... I want to get it over with."
¶ 12. After hearing arguments concerning a motion to suppress Wilson's statement, the trial court found that:
[A]ny delay was brought about by the defendant, not by the State, and he waived any rights he may have had by the postponement because he's the one that initiated the postponement of the initial hearing by asking to speak to the deputies on his way to the hearing. He did that and they complied with his wish. Then he wished to give a statement.
As Wilson has not shown his hearing was delayed by an impermissible purpose, we cannot find that the trial court erred in denying his motion to suppress; thus, we find no merit to this issue.
¶ 13. In his fourth and fifth issues on appeal, Wilson argues that he was denied his right to counsel during his statement prior to the initial hearing and that this statement was not given voluntarily. The record of Wilson's transcribed statement indicates that he never requested an attorney. The record also shows that Deputy McKenzie explained the waiver of rights form to Wilson before he signed it. Also, when asked by Wilson, "Do I have to have a lawyer?" McKenzie responded saying, "You don't have to but that's a right that...." McKenzie continued by stating, *1043 "You know if you want a lawyer now before we take this statement or whatever, you're perfectly right to have one." We reiterate that it was Wilson who requested to speak with an officer and, ultimately, confess to the crime. Furthermore, Wilson appeared to understand the waiver of rights form which he signed. We find no merit to these issues.
¶ 14. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER AND SENTENCE OF LIFE; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS; AND COUNT III, ARSON THIRD DEGREE AND SENTENCE OF THREE YEARS, ALL TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.