BARNES, J.,
for the Court:
¶ 1. Rodney Phillip McKenzie Jr. was convicted of capital murder and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC), without eligibility for parole. He appeals his conviction, and finding no error, we affirm the circuit court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶2. At approximately 3:00 a.m. on August 10, 2010, the Pascagoula Police Department was alerted to a single-vehicle accident. Upon arrival, the police discovered a blue van that had struck a telephone pole. In the driver’s seat was the deceased body of Johnny Bullock, who had been shot in the neck. There was also evidence of blunt-force trauma to Bullock’s head. A witness told police that two males, later identified as McKenzie and Daniel Hatten, had fled the scene of the accident. The police obtained surveillance video from a nearby apartment complex, which showed the two men had headed to another complex, Stewart Apartments. When given a description of the men, a maintenance worker for Stewart Apartments directed police to Apartment 22, *1148 where McKenzie resided. No one was in the apartment. However, McKenzie was quickly discovered in Apartment 17 and was taken into custody for questioning; McKenzie had Lortab pills on his person.
¶ 3. During a search of McKenzie’s apartment, police found an empty prescription pill bottle for Lortab with Bullock’s name on the label. Evidence later revealed the pill bottle contained Bullock’s DNA. Zarea Reid, the resident of Apartment 17 and a coworker of McKenzie, told investigators that she had given McKenzie a ride to work that morning at approximately 6:00 a.m. After their shift ended, McKenzie borrowed Reid’s phone, and she heard him ask someone if he wanted to buy some Lortab pills. She also said that McKenzie had lagged behind her while walking back to her apartment, and when she turned to see where McKenzie was, he came from the corner of the apartment building. A .380-caliber pistol was recovered in that same area, and ballistics testing later revealed that the recovered firearm had fired the bullet fragment that was removed from Bullock.
¶ 4. When interviewed by Detective David Sepulveda, McKenzie initially denied any involvement with Bullock’s murder. However, when he was told police had discovered video-surveillance evidence placing him near the crime scene, a picture of him holding a pistol on an internet social-media website, and the pill bottle with Bullock’s name at his apartment, McKenzie admitted he had been in Bullock’s van. He said he had been walking to a nearby store that evening when Bullock picked him up and agreed to sell him some Lortab. McKenzie has a liver disease and claimed that he needed the medication for pain. At approximately 2:11 a.m., Bullock and McKenzie went to a local convenience store, where Bullock met with Hatten. Surveillance video from the store shows McKenzie and Hatten met in the parking lot and walked towards the north side of the store. Bullock’s van exited a few minutes later. McKenzie told police that the three men went back to Bullock’s home to get the pills. They then returned to the store approximately thirty minutes later, and Bullock went inside to buy cigars. According to McKenzie, Hatten fought with Bullock right before the accident occurred, and the incident was a “robbery gone bad.” In his statement, McKenzie did not admit shooting Bullock.
¶ 5. McKenzie, along with Hatten, was indicted on January 14, 2011, for capital murder while in the commission of a robbery.[1] At trial, McKenzie testified on his own behalf and admitted he shot Bullock. He claimed that Bullock wanted sexual favors in exchange for the drugs and that he was merely defending himself. McKenzie said that due to his liver disease, any force applied to that area of his body could be fatal.
¶ 6. McKenzie was convicted of capital murder and sentenced to life imprisonment in the custody of the MDOC, without eligibility for parole. He filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied, and McKenzie now appeals, alleging several errors involving the admission of evidence and the giving of jury instructions. Finding no error, we affirm.
I. Whether the circuit court erred in refusing to admit evidence of the victim’s prior history of selling drugs and homosexual propensities.
¶ 7. James Muldoon, an employee of Bullock, told police that Bullock had homo *1149 sexual tendencies and had previously traded drugs for sex. When defense counsel questioned Detective Darren Versiga regarding Muldoon’s statements, however, the circuit court sustained the State’s objection as to relevance. McKenzie argues that “evidence of Bullock’s propensities towards homosexual conduct and his purported habit of trading pills for such acts are relevant under [Mississippi Rule of Evidence] 401, as they lend credence and support to [McKenzie’s] story of the events.” Specifically, McKenzie contends that he should have been afforded the opportunity to present this evidence to the jury as his theory of defense was that he was merely defending himself from Bullock’s advances.
¶ 8. The determination of whether evidence is relevant and admissible is “largely within the discretion of the [circuit] court, and reversal may be had only where that discretion has been abused.” Bennett v. State, 76 So.3d 736, 741 (¶ 14) (Miss.Ct.App.2011) (quoting White v. State, 742 So.2d 1126, 1134 (¶ 29) (Miss.1999)). “[This] discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.” Id.
¶ 9. McKenzie failed to include a proffer of Detective Versiga’s testimony on this issue. “When testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal.” Green v. State, 89 So.3d 543, 554 (¶ 28) (Miss.2012) (quoting Metcalf v. State, 629 So.2d 558, 567 (Miss.1993)). Therefore, this issue has not been properly preserved for appeal, and it is procedurally barred.
¶ 10. We find no abuse of discretion in the circuit court’s refusal to admit evidence of Bullock’s alleged propensity towards homosexual conduct. Evidence of a victim’s character is ordinarily “irrelevant” and inadmissible. M.R.E. 404(a) & cmt. “[H]owever, the character of a victim may be relevant ... in instances where the defendant claims that the victim was the initial aggressor and that the defendant’s actions were in the nature of self-defense.” M.R.E. 404 cmt. Before this evidence may be offered, however, the accused must provide “evidence of an overt act of aggression perpetrated against him by the victim.” Id. At trial, McKenzie testified that Bullock wanted to trade pills for sex, which caused a “little confrontation” between Bullock and Hatten. However, we find nothing to suggest that Bullock committed an overt act of aggression against McKenzie, who merely claimed that Bullock “started acting like he wanted to turn around and come back there, in the backseat.” He testified: “And when he ran into the pole, everybody kind of jerked and they stopped fighting. And I seen him look in the back window and like he started like acting like he wanted to turn around or whatever, so I pulled my gun out and I shot him.” Whatever McKenzie believed Bullock “wanted to [do],” the physical evidence confirms that Bullock was facing forward with his shoulder-harness seat belt on when he was killed. Therefore, we find no abuse of discretion in the circuit court’s ruling that the victim’s character evidence was inadmissible. The testimony was also inadmissible as hearsay; the defense improperly attempted to have Detective Versiga relate what had been told to him by Muldoon, who did not testify at trial.
¶ 11. Furthermore, this evidence was presented to the jury through Detective Sepulveda’s deposition testimony.
Q. Did [Muldoon] tell you anything about Mr. Bullock’s involvement with drugs?
*1150 [[Image here]]
[State objected to questioning on basis of hearsay. Witness allowed to proceed.]
A. Yes, he did.
Q. And what was that?
A. He said that he used [drugs] and he traded them.
[[Image here]]
Q. Traded them for what?
A. He liked men and he would trade them for sex sometimes.
Thus, while we find no merit to McKenzie’s assignment of error, even if there were error, it was harmless, as the substance of Muldoon’s statement to police was before the jury.
II. Whether the videotaped deposition of a witness may be admitted in a criminal case in lieu of in-court testimony.
¶ 12. Concerned that Detective Se-pulveda might not be able to attend the trial because he was in poor health and scheduled for surgery, the State filed a “Motion to Preserve Testimony by Deposition” on January 30, 2012. The motion requested that a videotaped deposition be conducted in the presence of the defense “to ensure Defendants will be afforded an opportunity to exercise their Sixth Amendment right to confront the witness at the deposition.”[2] The motion was granted, over objection by defense counsel. The recorded deposition was held February 9, 2012, with McKenzie and his counsel present.
¶ 13. As feared, Detective Sepulveda was ill on March 1, 2012, the day he was scheduled to testify at the trial. Both parties agreed to wait and see if he could testify in person the next day; however, he was unable to do so. Therefore, the circuit court allowed the admission of Detective Sepulveda’s videotaped deposition testimony.
¶ 14. McKenzie argues that it is not “appropriate” to allow deposition testimony to be admitted in a criminal case “in lieu of in-court testimony.” Although he suggests this is an area of first impression for this Court, we have previously addressed this issue, finding that testimonial statements may be admitted in certain circumstances. “[T]he testimonial statements of a witness who does not testify at trial are inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.” Conners v. State, 92 So.3d 676, 683 (¶ 16) (Miss.2012) (emphasis added) (citing Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). In Wilson v. State, 923 So.2d 1039, 1041 (¶¶ 7-8) (Miss.Ct.App.2005), this Court up held a circuit court’s decision to allow the videotaped deposition testimony of an expert witness. The circuit court had declared the witness “unavailable,” observing that the case had already been postponed for two years and that there was “no reasonable way to obtain [the witness’s] presence in the state during that week [of trial, and t]he only alternative would be to postpone the trial[.]” Id. at (¶ 7). The circuit judge, therefore, allowed the testimony to be taken by deposition with the defendant present and the videotaped testimony to be admitted at trial.
¶ 15. Likewise, in the present case, we find that both elements were satisfied, allowing for the admission of Detective Sepulveda’s deposition testimony. As *1151 we will discuss in further detail in the next issue, Detective Sepulveda had serious health complications and was considered by the circuit judge to be “unavailable” at the trial. Defense counsel had the opportunity to cross-examine Detective Sepulve-da during the deposition, with McKenzie present. Therefore, there was no violation of McKenzie’s right to confront the witness. Accordingly, we find the admission of Detective Sepulveda’s deposition testimony into evidence was not an abuse of discretion.
III. Whether the circuit court erred in finding that Detective Se-pulveda was an unavailable witness.
¶ 16. As discussed, the circuit court allowed the taping of Detective Se-pulveda’s testimony by deposition in the event he might not be available at trial. During the motions hearing held on February 2, 2012, Detective Sepulveda testified he had congestive heart failure, which had resulted in serious medical complications, including high blood pressure, and that he had been hospitalized once a month since April 2011. He told the court that he was “lucky to be alive right now” and that his “heart was about four times the size of normal heart, so there’s a lot of damage inside.” Detective Sepulveda also stated that he was scheduled for laparo-scopic surgery on February 15, 2012, to remove a tumor and his adrenal gland.
¶ 17. The circuit judge noted at the motion hearing that the detective’s surgery was scheduled “almost into the trial or right before” and stated: “I also made a point of noticing the officer’s demeanor throughout. He’s certainly short of breath, and struggled based on his health problems, had to have a water break, soft spoken.” Later, at trial, it was determined that Detective Sepulveda’s medical condition had rendered him too weak to testify in person, making him an “unavailable” witness and allowing for the introduction of his deposition testimony, over the defense’s objection.
¶ 18. McKenzie argues that there was “no adequate on[-]the[-]reeord determination of [Detective Sepulveda’s] unavailability.” Mississippi Rule of Evidence 804(a)(4) states that a witness may be declared “unavailable” if he “[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]” This argument by McKenzie is without merit. There was extensive discussion at the motions hearing regarding the detective’s serious medical condition. Detective Sepulveda was scheduled for surgery two weeks prior to trial, although it is unclear from the record whether the surgery to remove his adrenal gland tumor had been performed by the time of the trial. Regardless, while the detective was not in the hospital on March 1 (the date he had been originally scheduled to testify), his numerous physical infirmities were well documented to the circuit court and determined to be of such severity that testifying in person could have been detrimental to his health. The next morning, the State notified the circuit judge that Detective Sepulveda was “in extreme pain” and could not get up from a chair.
¶ 19. Accordingly, we find no error in the circuit judge’s decision to declare the witness unavailable and to admit his deposition testimony.
IV. Whether the circuit court erred in giving Jury Instruction S-13A.
¶ 20. Jury Instruction S-18A reads:
The Court instructs the jury that, under Mississippi law, self-defense cannot be a defense to the crime of capital murder committed during the course of a rob *1152 bery. If you find the defendant not guilty of capital murder, and consider a lesser[-]included offense, such as deliberate design murder, then you may consider self-defense, as to the charge of deliberate design murder as defined in other instructions.
Defense counsel did not object to this instruction at trial; therefore, this issue is waived for consideration on appeal. “It is well established that failure to object timely to a jury instruction at trial waives the issue on appeal.” Buchanan v. State, 84 So.3d 812, 814 (¶ 7) (Miss.Ct.App.2011) (citing Peterson v. State, 37 So.3d 669, 675 (¶ 29) (Miss.Ct.App.2010)).
¶ 21. Notwithstanding the procedural bar, we find no merit to McKenzie’s argument. The supreme court considered this same issue in Layne v. State, 542 So.2d 237 (Miss.1989). Robert Layne stabbed and killed a man during the commission of a robbery, after the victim attempted to stop him from escape. Id. at 238. One of Layne’s arguments on appeal was that a jury instruction given by the circuit court “strip[ped] him of the defense which he relied on at trial — self-defense.” Id. at 242. Like McKenzie, Layne tried to claim that the victim, who was drunk, “made homosexual advances” and that the killing was in self-defense. Id. at 244. The supreme court found no error, observing: “Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense.” Id.
A person who commits an armed robbery forfeits his right to claim[,] as a defense[,] the necessity to protect himself against the use of excessive force by either the intended victim of the robbery or by any other person’ intervening to prevent the crime or to apprehend the criminal, absent a factual showing that at the time the violence occurred, the dangerous situation created by the armed robbery no longer existed.
Id. at 243 (quoting Gray v. State, 463 P.2d 897, 909 (Alaska 1970)).
¶ 22. In the present case, McKenzie was the aggressor; he admitted to police that he was trying to rob Bullock. McKenzie also testified at trial that he was seated in the back of the van, behind Bullock. Bullock’s body was found facing forward, his seat belt was still on, and he had been shot in the back of his neck. The medical examiner, Dr. Paul McGarry, testified that the wound was a “contact gunshot wound,” which is typically made “when the end of the barrel of the gun is pressed against the neck and the trigger is pulled.” Dr. McGarry also stated that there was no evidence to indicate Bullock had hit anyone; rather, Bullock had “defensive[ ]-type” injuries on the “back of his wrist.” Accordingly, we find no error in the giving of this instruction.
V. Whether the circuit court erred in giving Jury Instruction S-3.
¶ 23. Jury Instruction S-3 stated: “The Court instructs the jury that the term ‘engaged in the commission of the felony crime of robbery’ includes actions of Rodney Phillip McKenzie, Jr. leading up to the robbery, the actual robbery and/or the flight from the scene of the robbery.” At trial, defense counsel objected to the instruction, claiming that the instruction does not follow Mississippi law.
¶ 24. “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” McDowell v. State, 813 So.2d 694, 697 (¶ 7) (Miss.2002) (quoting Coleman v. State, 697 So.2d 777, 782 (Miss.1997)).
¶ 25. The Mississippi Supreme Court has stated:
*1153 Mississippi recognizes the “one continuous transaction rationale” in capital cases. West v. State, 553 So.2d 8, 13 (Miss.1989). We have construed our capital murder statute and held that “the underlying crime begins where an indictable attempt is reached.” Pickle v. State, 345 So.2d 623, 626 (Miss.1977). “An indictment charging a killing occurring “while engaged in the commission of one of the enumerated felonies includes the actions of the defendant leading up to the felony, the attempted felony, and flight from the scene of the felony.” Turner v. State, 732 So.2d 937, 950 [ (¶ 47) ] (Miss.1999) (quoting West, 553 So.2d at 13).
Goff v. State, 14 So.3d 625, 650 (¶ 93) (Miss.2009). McKenzie argues that he only formed an intent to rob after he shot Bullock in self-defense and that Jury Instruction S-3 was given in error as it “presupposes that a robbery occurred.” However, we find there was sufficient evidence presented to support the giving of this instruction.
¶ 26. A trial witness, Nicole Harvey, testified that McKenzie contacted her a few hours prior to the murder and asked her where he could “hit a lick,” a slang term for setting up someone for robbery. On her way home early that morning, Harvey saw the crime scene where Bullock’s van had crashed. When she reached her home a few minutes later, McKenzie called Harvey and “asked [her] did [she] know anybody that wanted to buy any Lortab, 7.5.”
¶ 27. Moreover, when McKenzie was interviewed by Detective Sepulveda, he said: “I never should have even took that sh*t, man.” He also admitted: “For real, honest[l]y. [I]t’s a robbery gone bad.... Man, .... we were tryin’ to rob and then ... [he] ran into the pole.” He stated: “We robbed the n* ⅜ ⅜ *. By the end of it[,] he was dead.”
¶ 28. Based on this evidence, we find a reasonable jury could have determined that McKenzie intended to rob Bullock prior to shooting him and did, in fact, rob Bullock by taking the pills. Accordingly, we find no error in the giving of this jury instruction.
VI. Whether the errors alleged above could be considered harmless or, alternatively, whether the cumulative effect of the errors mandates a reversal of McKenzie’s conviction.
¶ 29. McKenzie contends that there were multiple violations of his fundamental right to a fair trial, which could not be considered harmless errors. Alternatively, he also claims that even if the alleged individual errors are found to be harmless, the cumulative effect of such errors warrants a reversal of his conviction. However, as we have found no errors exist in the above issues and that McKenzie has suffered no violation of any fundamental right to a fair trial, these claims are without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT POSSIBILITY OF PAROLE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. An "Agreed Order of Severance” was entered on February 1, 2012, and McKenzie and Hatten were tried separately.

. See Jenkins v. State, 102 So.3d 1063, 1066 (¶ 9) (Miss.2012) (A criminal defendant has a guaranteed constitutional “right to confront and cross-examine the witnesses against him.") (citing U.S. Const, amend. VI, Miss. Const, art. 3, § 26).