# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01524-COA

ARNOLD BAILEY                                                              APPELLANT

v.

STATE OF MISSISSIPPI                                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD T. STARRETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF GRAND LARCENY AND SENTENCED TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION |
| DISPOSITION: | AFFIRMED - 12/06/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON  AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     On April 1-2, 2015, a jury in the Rankin County Circuit Court found Arnold Bailey

guilty of grand larceny in violation of Mississippi Code Annotated section 97-17-41 (Rev.

2006), and the court sentenced him to serve ten years in the custody of the Mississippi

Department of Corrections (MDOC), with two years suspended, followed by five years of

supervised probation.[1]  The trial court entered an order allowing Bailey to file an out-of-time appeal.  Bailey filed his notice of appeal of his conviction and sentence on October 12, 2015.  Bailey also filed a motion for a judgment notwithstanding the verdict, or, in the alternative, a new trial.  The trial court denied Bailey's posttrial motions.

¶2.     Bailey now appeals, asserting the following assignments of error:  (1) the trial court committed reversible error in cutting off Bailey's good-faith defense by sustaining the State's hearsay objection to what Douglas Walters[2] told Bailey, since the testimony was not offered for the truth of the statements but to show that Bailey relied upon them in good faith; (2) the evidence was insufficient to support a finding that Bailey either took away property of the victim or aided and abetted Walters in taking away property of the victim; (3) the trial court committed reversible error in refusing Bailey's circumstantial-evidence jury instruction; (4) the prosecution committed plain error during closing argument or, in the alternative, defense counsel was ineffective for failing to object; and (5) the effect of the cumulative errors entitles Bailey to a new trial.  Finding no error, we affirm.

**FACTS**

¶3.     On February 9, 2012, police officers arrested Bailey for stealing items from the property of Robert Nelson.  At Bailey's trial, Nelson testified that shortly before 8 a.m. on Thursday, February 9, 2012, he drove onto his approximately 140-acre property on

---

[1] The trial court sentenced Bailey to an additional term of five years on supervised probation and to pay costs and fees of $1,931.50, and $13,000 in restitution.

[2] Bailey was indicted with a codefendant, Walters.  Bailey and Walters were tried separately.  Walters is also appealing his conviction in a separate appeal.

2

Tanglewood Drive in Rankin County to check on construction equipment he stored at that location. When Nelson arrived, he discovered that the gate to his property had been opened, and that someone had cut the chain used to secure the gate. Nelson observed that another lock had been used to secure the severed ends of the chain. Nelson testified that he saw a man, later identified as Bailey, driving a forklift carrying a concrete hopper. Nelson called the police and waited for them to arrive.

¶4. Investigator Bradley Turner of the Brandon Police Department testified that shortly before 8 a.m. on February 9, 2012, he was called to the location on Tanglewood Drive in Brandon, Mississippi. Investigator Turner testified that when he asked Bailey what he was doing on the property, Bailey replied that he was removing items that someone else had placed on his property. Investigator Turner testified that when he informed Bailey that the property belonged to someone else, Bailey then said that he had been hired by Walters to remove scrap metal from the property. Investigator Turner testified that he obtained a copy of Bailey's drivers license, which showed Bailey's address as 297 Value Road. Investigator Turner testified that this address was "directly through the woods" from Nelson's Tanglewood Drive property.

¶5. Officer John Adams of the Rankin County Sheriff's Department also responded to Nelson's call. Officer Adams testified that when he asked Bailey why he was on the property, Bailey claimed that the land belonged to his son and he was removing items off of the property for him. Officer Adams testified that he ran the vehicle identification number on the forklift Bailey was using, and he discovered that Walters rented the forklift from

3

McGraw Rental. When he asked Bailey about the forklift, Officer Adams testified that Bailey responded that he was working for Walters.

¶6. A Rankin County grand jury indicted Bailey and Walters for stealing metal items, including steel scaffolding, from the property of Nelson. The State subsequently amended the indictment to limit the stolen items to steel scaffolding and to reflect that the items were stolen on February 8-9, 2012. Nelson testified that from 150 to 200 pieces of heavy specialized scaffolding were missing, which cost about $50 to $60 each. Nelson also testified that he had not granted anyone permission to be on his land.

¶7. At trial, Bailey claimed that on February 8, 2012, his acquaintance, Walters, called Bailey and asked him if he would be interested in helping on a job to clean up property that Walters had been hired to do at Nelson's property. Bailey stated that Walters had a key to this property, and Walters gave the key to Bailey on the morning of February 9, 2012. Bailey maintained that he believed he was being hired to clean up property and that he would be paid in return.

¶8. Bailey testified that when he arrived to Nelson's property, his truck became stuck in a ditch and he used a forklift to get it unstuck. During this time, Bailey testified that a man drove up and asked him what he was doing there. Bailey responded that he was performing work for Walters. Bailey testified that the man then made a phone call, and police arrived shortly thereafter.

¶9. During Bailey's testimony regarding what Walters told him, the State made two hearsay objections. As a result, Bailey was prohibited from testifying about the specifics of

4

his conversation with Walters. However, Bailey provided testimony that he arrived on Nelson's property only because he believed he was there to perform work for Walters. Bailey also denied lying to police officers.

¶10. Jeff Pate of McGraw Rental provided testimony that he rented a front-end loader to Walters on February 7, and that he never saw Bailey. Steve Lambright, an employee of General Recycling, a company that purchases scrap metal, testified that he purchased $722.40 worth of bridge scaffolding from Walters on February 9, 2012. Lambright testified that Bailey was not present when Walters sold the scrap metal. During trial, the State showed Nelson pictures of the metal scaffolding sold to General Recycling and Nelson testified that the metal scaffolding belonged to him and was missing from his property.

¶11. The jury ultimately found Bailey guilty of grand larceny, and the trial court sentenced him to serve ten years in the custody of the Mississippi Department of Corrections (MDOC), with two years suspended, followed by five years of supervised probation. Bailey now appeals his conviction and sentence.

## DISCUSSION

### I.    Hearsay Objection

¶12. Bailey argues that the trial court committed reversible error in depriving him of his theory of defense by improperly sustaining the State's hearsay objection to what Walters told Bailey regarding performing work on Nelson's property. Bailey claims that although he was allowed to testify to his actions and what he knew of Walters's actions, he was not allowed to testify to what Walters told him that made him believe that he was authorized to be on

5

Nelson's property.

¶13. Bailey also claims that defense witness Debra Grant was similarly not allowed to testify to what she heard Walters tell Bailey.[3] Grant testified that she lived with Walters in February 2012. When Grant was asked what she knew about Walters hiring Bailey to remove material from Nelson's property, Grant began to explain that she overheard Walters call Bailey, but the State objected. The trial court sustained the State's hearsay objection and did not allow Grant to testify to what she heard Walters tell Bailey. Grant was allowed, however, to testify that Walters gave Bailey the key to Nelson's property.

¶14. On appeal, "[w]e review a trial court's admission or exclusion of evidence for abuse of discretion." *Wilson v. State*, 96 So. 3d 721, 726 (¶13) (Miss. 2012); *Davis v. State*, 183 So. 3d 112, 116 (¶17) (Miss. Ct. App. 2015).

¶15. Bailey admits that his defense counsel failed to make a proffer of his testimony once the hearsay objection was sustained. Our supreme court has provided that "[w]hen testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal." *McKenzie v. State*, 119 So. 3d 1145, 1149 (¶9) (Miss. Ct. App. 2013) (citing *Green v. State*, 89 So. 3d 543, 554 (¶28) (Miss. 2012)). In *McKenzie*, the defense questioned a witness, Detective Versiga, about statements made to Detective Versiga regarding the victim, and the State objected as to relevance. *Id*. at (¶7). The trial court sustained the State's objection. *Id*. On appeal, the supreme court found that the defense failed to make a proffer of Detective Versiga's proposed testimony; thus, the issue had "not

---

[3] Walters did not testify at Bailey's trial.

been properly preserved for appeal, and it is procedurally barred." *Id.* at (¶9). Bailey acknowledges that such a proffer is necessary for the appellate court to discern whether precluding the testimony was prejudicial to the defense; however, Bailey maintains that such a proffer would have been superfluous because counsel's opening statement fully explained what Bailey's testimony would have been and how crucial it was to establishing his good-faith defense.[4]

¶16.    Regarding the hearsay objections sustained by the trial court herein, the record reflects the following conversation ensued:

> Bailey:        The conversation started off, "Man, what you doing?" I said, "Well" –
>
> Prosecutor:   Objection as to hearsay, your Honor.
>
> The Court:    Sustained. Mr. Bailey, you can't say what he said. As a result of your conversation with him, what, if anything did you do?
>
> Bailey:        (No response).

Bailey then testified that Walters gave him a key to a gate on Nelson's property. When he was asked what the key was for, the following occurred:

---

[4] Bailey argues that if this Court should conclude that defense counsel should have made a formal proffer of Bailey's and Grant's testimony about what Walters said, then it was ineffective assistance of counsel to fail to do so and Bailey's conviction should be vacated. The supreme court has "note[d] that ineffective-assistance-of-counsel claims ordinarily are more appropriately brought during post-conviction proceedings, as this Court on direct appeal is limited to the trial-court record in its review of the claim." *Galloway v. State*, 122 So. 3d 614, 638 (¶52) (Miss. 2013). The supreme court explained that "[i]f we find that the record before us contains insufficient information to address the claim, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief." *Id.* However, appellate courts "may address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Id.*

| | |
|---|---|
| Defense counsel: | What was the key for? |
| Bailey: | He told me about – |
| Prosecutor: | Objection as to hearsay. |
| Bailey: | – saying – the key was for – |
| The Court: | Hang on just a second. So you met him to get a key? |
| Bailey: | Yes. |
| The Court: | Did you meet him and did you get a key? |
| Bailey: | Yes. |
| The Court: | What, if anything, then did you do with that key? |
| Bailey: | I went and I opened the lock up. |
| The Court: | Go ahead. |

¶17. The State argues that although the hearsay evidence was excluded, Bailey was still able to present his theory of defense. *See Ames v. State*, 17 So. 3d 130, 139 (¶41) (Miss. Ct. App. 2009) (finding no error in the trial court's decision allowing the defendant to testify regarding events as long as he avoided hearsay statements). The record reflects that Bailey testified that Walters had approached him the night before he went to Nelson's land and said he had a job for Bailey on Nelson's land and would call him later to give him the details. Bailey said he met Walters the next morning and was given a key to unlock the gate to Nelson's property. Bailey testified he was on Nelson's property Monday morning because Walters said the job consisted of working on that property, at that time. Bailey explained that when Nelson allegedly confronted him, Bailey thought Nelson was the job foreman and told

8

Nelson he was working for Walters. Bailey told the jury he did not know that Walters did not have permission to be on Nelson's land.

¶18. The record reflects that Bailey submitted jury instruction D-2 setting out his theory of defense. Instruction D-2 stated:

> Evidence has been presented that the Defendant, Arnold Bailey, acted in ignorance or on mistaken belief of fact. "Ignorance" or "Mistake of Fact" is a defense to the commission of a crime if:
>
> > 1. The mistaken belief is honestly held, and
> >
> > 2. The belief is of such a nature that the conduct would have been lawful and proper, had the facts been as they were believed to be, and
> >
> > 3. The mistaken belief is not the result of the negligence or fault of the defendant.
>
> If the State has failed to prove from the evidence in this case beyond a reasonable doubt that the Defendant, Arnold Bailey, acted with knowledge of the true facts or was negligent in determining the true facts, then you shall find the Defendant, Arnold Bailey, not guilty.

¶19. At the jury-instruction conference, the trial court found this instruction inappropriate. The trial court explained:

> [H]onestly, I thought that that was going to be the defense. But from what I heard from the Defense was that this Defendant didn't take anything or participate in taking anything from that property so I don't really see how this instruction would apply. Do you understand what I'm saying? . . . If he said that he took it at Doug Walters'[s] insistence or based upon his word, then perhaps, but –

Bailey's counsel agreed to withdraw the instruction. Bailey argues that the trial court was mistaken in believing that Bailey could only claim a good-faith defense if he admitted to acting with Walters to take the property. Bailey claims that the since the trial court

9

erroneously precluded him and Grant from testifying as to what Walters told Bailey, no evidentiary basis existed to give the good-faith instruction, and as a result, defense counsel was forced to withdraw it.

¶20.   However, the record reflects that the trial court did allow jury instruction 4, which provided:

> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
>
> . . . .
>
> In other words, you may not find Arnold Bailey guilty unless you find beyond a reasonable doubt . . . that Arnold Bailey voluntarily participated in [the] commission [of the crime] with the intent to violate the law.

This jury instruction thus required the jury to determine whether Bailey intentionally participated or associated himself with Walters to bring about the crime. We find that this instruction indeed sets forth Bailey's theory of defense. Since Bailey's theory of defense was covered in jury instruction 4, which was submitted to the jury before deliberation, we cannot say that Bailey's counsel was deficient in withdrawing defense instruction D-2. *See Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶5) (Miss. 2010) (We must "strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent.").

## II.    Insufficient Evidence

¶21.   Bailey next argues that the State failed to show that Bailey met all of the elements

10

necessary to convict him for grand larceny. Bailey specifically asserts that the State presented no proof that he participated in helping Walters sell or steal any property belonging to Nelson. As a result, Bailey asserts that his motion for a directed verdict and his proposed peremptory jury instruction were erroneously denied.

¶22. "A motion for a directed verdict and a request for a peremptory instruction challenge the legal sufficiency of the evidence supporting a conviction." *Smith v. State*, 180 So. 3d 771, 773 (¶10) (Miss. Ct. App. 2015). On appeal, we review "a challenge to the sufficiency of the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the evidence." *Henley v. State*, 136 So. 3d 413, 415 (¶8) (Miss. 2014). We must reverse and render "[i]f the facts and inferences so considered point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]" *Id*. at 415-16 (¶8).

¶23. The State maintains that it proved each element of grand larceny at Bailey's trial, and reiterated each proven element in its closing argument. The version of section 97-17-41 in effect in 2012 provided:

> [E]very person who shall be convicted of taking and carrying away, feloniously, the personal property of another of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny and shall be imprisoned . . . for term not exceeding ten (10) years[.]

The trial court submitted jury instruction 5 to the jury, which listed the elements of grand larceny as follows: (1) willfully, unlawfully, and feloniously (2) taking, stealing, and carrying away (3) metal scaffolding, valued at $500,000 or more, (4) from the personal property of

11

Nelson with the intent to permanently deprive the owner of his personal property.

¶24. Our review of the record shows that the State presented the transaction ticket into evidence, establishing that the scrap value of the metal scaffolding was over the requisite $500. The transaction ticket provided showed the value of the metal was $722.40. Nelson testified at trial that the metal scaffolding belonged to him. Nelson stated that after Bailey was caught on his land, he looked around his property and realized a significant amount of his scaffolding and other steel items were missing. Nelson then identified the scaffolding in the General Recycling scale photo as the specific type of bridge scaffolding he owned and was missing. Nelson further testified he is the only person in the area who uses that kind of scaffolding. Lambright, who purchased the stolen scrap metal from Walters, testified that the metal scaffolding was scrapped for money and quickly melted down; as a result, Nelson was permanently deprived of his property. Finally, the State argued that Bailey aided and abetted Walters, or acted in concert with Walters, to meet the element of taking and carrying away, feloniously. During closing argument, the State explained to the jury that "the law recognizes that ordinarily anything a person can do for himself may also be accomplished by that person through the direction of another person or his agent by acting in concert under the direction of another person or persons in [a] joint effort or enterprise." The State reasoned that although Bailey did not remove the property from Nelson's land, he was using a forklift to move Nelson's equipment around, therefore presumably working with Walters or under his direction to gather and remove Nelson's property.

¶25. The State also argued that Bailey was an active participant in the crime, and not a

12

knowing spectator or innocent party, explaining that a knowing spectator or innocent party would not have lied to two separate law-enforcement officers about his purpose on Nelson's land.

¶26.   Upon our review of the record, we find that the State presented credible evidence at trial such that a reasonable juror could find beyond a reasonable doubt that Bailey was guilty of grand larceny.  *See Smith*, 180 So. 3d at 775 (¶16).  This issue lacks merit.

### III.   Circumstantial-Evidence Jury Instruction

¶27.   Bailey claims that the trial court erred in refusing to allow his circumstantial-evidence jury instruction.  Bailey argues that the present case constituted a circumstantial-evidence case since he did not confess to the crime, nor were there any eyewitnesses to the crime. Thus, the State bore the burden of proving Bailey's guilt "not only beyond a reasonable doubt, but to the exclusion of every reasonable hypothesis consistent with innocence."

¶28.   We recognize that "jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Thomas v. State*, 75 So. 3d 1112, 1114 (¶9) (Miss. Ct. App. 2011) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)).  In reviewing the jury instructions given at trial, the instructions "must be read as a whole.  When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."  *Id*. at 1115 (¶9). We further acknowledge that "a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court."  *Id*.

13

¶29.    At trial, Bailey offered a jury instruction (D-6), which stated:

> The Court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the Defendant, then the evidence for the State must be so strong as to establish the guilty [sic] of the Defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.

Although the trial court cautioned that "only by the narrowest of margins do I believe that there is some direct proof of the taking," the trial court refused this instruction. We recognize that the Mississippi Supreme Court has set forth that "[a] circumstantial evidence case is one where the State is without a confession and wholly without eyewitnesses to the gravamen of the offense charged." *Garrett v. State*, 921 So. 2d 288, 291 (¶17) (Miss. 2006) (internal quotation marks omitted). The supreme court further explained that "where the accused has made an admission on an element of the offense, it is no longer a circumstantial evidence case." *Id*. (citing *Lynch v. State*, 877 So. 2d 1254, 1256 (Miss. 2004)). "The defendant is not entitled to a circumstantial evidence instruction where both circumstantial and direct evidence are admitted at trial." *Id*. at 292 (¶17).

¶30.    The record reflects that this case was not a purely circumstantial case. Eyewitnesses to the offense testified at trial, as follows: Officer Adams testified that Bailey told him he was moving some equipment off his son's property; Investigator Turner testified he saw Bailey on the property and the rented forklift was stopped but still running by Bailey's truck; and Nelson testified he drove onto his property and saw Bailey driving a forklift and moving a piece of equipment to a "sort of a staging area . . . to load stuff on trailers." Bailey also testified that he had been on Nelson's property that morning.

14

¶31. After our review, we find no abuse of discretion by the trial court in denying Bailey's proposed circumstantial-evidence jury instruction. *See Thomas*, 75 So. 3d at 1114 (¶9).

### IV.    Closing Argument

¶32. Bailey argues that during the State's closing argument, the prosecutor committed plain error by improperly expressing his own personal belief in Bailey's guilt. During the State's closing, the prosecutor stated: "I believe this defendant has insulted your common sense and that we have proven, beyond a reasonable doubt, that this defendant was involved in this and that he is guilty of the crimes charged." Bailey maintains that "[a] prosecutor is forbidden from interjecting his personal beliefs regarding the veracity of witnesses during closing argument." *Foster v. State*, 639 So. 2d 1263, 1288 (Miss. 1994).

¶33. Bailey acknowledges that his counsel failed to object to this statement at trial, but he argues that in *Foster*, the supreme court applied the plain-error standard because the defendant failed to object. *Id*. at 1288-89; *see also Matthews v. State*, 132 So. 3d 646, 653 (¶30) (Miss. Ct. App. 2014) (failure to object to prosecution's statements during closing argument constitutes procedural bar). However, Bailey argues that if the failure to object to this statement deprived Bailey of his constitutional rights, then it is ineffective assistance of counsel to fail to object. We again state "that ineffective-assistance-of-counsel claims ordinarily are more appropriately brought during post-conviction proceedings, as [the appellate court] on direct appeal is limited to the trial-court record in its review of the claim." *Galloway*, 122 So. 3d at 638 (¶52).

¶34. In *Matthews*, 132 So. 3d at 654 (¶33), we explained that "[t]he prosecutor's

boundaries in closing arguments are wide—extending not only to the facts presented in evidence, but also to deduction and conclusions he may reasonably draw therefrom, and the application of the law to the facts." (Internal quotation marks omitted). "As applied to closing arguments, plain error may only be found when the substance of the statement is out of bounds for closing arguments." *Mitchell v. State*, 21 So. 3d 633, 642 (¶31) (Miss. Ct. App. 2008) (internal quotation marks omitted) (citing *Boyd v. State*, 977 So. 2d 329, 337 (¶34) (Miss. 2008)). In *Mitchell*, this Court recognized that

> the supreme court has alluded to what is "out of bounds" as follows:

>> Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.

*Id.* (citing *Dampier v. State*, 973 So. 2d 221, 235 (¶39) (Miss. 2008)).

¶35. Since Bailey's counsel failed to object to the prosecutor's statement at trial, Bailey must demonstrate that a constitutional right was violated as a result of the State's comments in order to overcome the procedural bar. *See id.* at (¶32). Stated differently, in considering the prosecutor's remarks in light of the entire trial, we must determine if the comment rises "to the level of prosecutorial misconduct so extreme as to violate [Bailey's] constitutional right to a fair trial." *Matthews*, 132 So. 3d at 654 (¶34).

¶36. The State argues that the prosecutor's statement at issue does not reflect his personal

16

opinion on the merits of the case; rather, the statement speaks directly to the quality of the evidence against Bailey. We have held that "[e]xcept to the extent the prosecutor bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses." *Stokes v. State*, 141 So. 3d 421, 427 (¶24) (Miss. Ct. App. 2013). The State maintains that the prosecutor's statement was based upon the evidence and facts presented at trial and was not inflammatory or highly prejudicial and did not unduly prejudice the jury.

¶37. We have reviewed the record from Bailey's trial in its entirety to determine if the prosecutor's comment "I believe this defendant has insulted your common sense and that we have proven, beyond a reasonable doubt, that this defendant was involved in this and that he is guilty of the crimes charged" resulted in a miscarriage of justice. Based on guidance from the supreme court in *Dampier*, 973 So. 2d at 235 (¶39), we cannot say that the prosecutor's statement was out of bounds. As stated, "plain error may only be found when the substance of the statement is out of bounds for closing arguments." *Mitchell*, 21 So. 3d at 642 (¶31). Furthermore, the record reflects that several witnesses provided testimony offering evidence supporting Bailey's guilt. *See Stokes*, 141 So. 3d at 428 (¶28). Accordingly, we find that the prosecutor's statement failed to prejudicially affect Bailey's constitutional right to a fair trial.

## V. Cumulative Error

¶38. Finally, Bailey claims that his conviction should be reversed on the basis of cumulative error, the effect of which deprived him of a fair trial.

¶39. The supreme court has explained that "[t]he cumulative error doctrine stems from the

17

doctrine of harmless error which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007) (citing *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007)). The supreme court clarified that "where there is no error in part, there can be no reversible error to the whole." *Id*. Since we have found no errors regarding Bailey's conviction, we likewise find no cumulative error. This issue is without merit.

¶40. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. IRVING, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**