MAXWELL, J.,
for the Court:
¶ 1. Justin Matthews was convicted of sexual battery of a sixteen-year-old girl. While the State offered no physical evidence of the rape, the jury heard testimony from the victim and witnesses who corroborated her version of events leading up to and following the sexual encounter.
¶ 2. On appeal, Matthews claims the jury’s verdict was against the overwhelming weight of the evidence. He primarily argues the jury should have been instructed on an evidentiary inference that, had the State conducted forensic testing on the victim’s clothing, the test results would have been exculpatory. But Matthews did not request a jury instruction on a spoliation inference, and our review shows no inference instruction was warranted. To receive a spoliation-of-evidence inference, the defendant must show the State intentionally and in bad faith destroyed potentially exculpatory evidence. And here, Matthews concedes the State did nothing wrong regarding the physical evidence. With no required inference, the jury was free to weigh the evidence concerning the victim’s clothing as it saw fit.
¶ 3. After viewing all evidence in the light most favorable to the jury’s verdict, we find no evidentiary reason to disturb the jury’s decision. And because Matthews did not object and thus waived his remaining argument — that the prosecution made an improper comment during closing argument — we affirm his conviction.
Background Facts and Procedural History

I. Sexual Battery

¶ 4. In July 2011, sixteen-year-old Angela[1] was visiting her cousin Kimberly for a few days. Kimberly, her husband, and their young children lived in a mobile home directly behind Matthews’s brother’s house. One night during Angela’s visit, Matthews, his brother, and his brother’s girlfriend stopped by to socialize. As the night wore on, the gathering dwindled to Kimberly, Angela, and Matthews. Kimberly testified that Angela asked permission to go next door with Matthews to get a cold Dr. Pepper. Kimberly told Angela *649 not to be gone long because it was time for bed.
¶ 5. According to Angela, when she and Matthews returned to the mobile home, they found Kimberly asleep on the couch. So they went outside on the porch to smoke a cigarette. After about ten minutes, Matthews grabbed Angela by the wrist and pulled her around the side of the mobile home where there were no lights. Angela claimed that he then pushed her to the ground, pulled down her shorts, and put his penis in her vagina. While Angela testified she did not scream because she “was too nervous,” she did tell Matthews “no.” And this “no” was loud enough for Matthews to hear because “she wanted to get rid of him.”
¶ 6. Afterwards, Matthews left, and Angela lay on the ground for a few minutes. She eventually got up and went back inside her cousin’s house, where she crawled into a broken baby crib and curled up in the fetal position. She then texted her best friend, saying, “I don’t know what to do.”
¶ 7. Angela testified Matthews raped her around six in the morning, just as it was getting light. And her friend testified she received the first text message from Angela at 6:20 a.m. that morning. The friend immediately called Angela, who was sobbing and barely comprehensible. Through her tears, Angela told her friend that she had “kinda” had sex. When the friend asked what Angela meant by “kinda,” Angela explained that even though she had said “no,” Matthews did not stop.
¶ 8. Angela remained at her cousin’s house several more days but did not tell Kimberly what had happened. According to Kimberly, she did not see Matthews at his brother’s house after that night. Finally, Angela texted her mother’s live-in boyfriend, J.C., to come pick her up. When J.C. arrived, he noticed Angela was acting differently. He asked her what had happened, and she told him about what Matthews had done. After briefly stopping at their home, J.C. took Angela to his mother’s house, while he went to get Angela’s mother from work. When Angela’s mother learned what had happened, she and J.C. took Angela straight to the sheriffs department.

II. Investigation and Trial

¶ 9. According to a sheriffs department investigator, he took Angela’s statement but did not subject her to any physical examination. He decided against forensic testing because several days had passed since the purported rape and Angela had since showered several times. Angela maintained she had not been scratched or bruised during the rape. And while she thought the shorts she had been wearing may have gotten grass stains on them, she told the investigator her mother had already washed them. So the investigator did not attempt to collect her clothes as potential evidence. The investigator questioned Matthews, who admitted to drinking heavily that night. Matthews also admitted to “visiting” with Angela that night and going with her to get the Dr. Peppers. But according to the investigator, Matthews “denied the other allegations.” Matthews was charged with sexual battery — specifically, penetration without Angela’s consent in violation of Mississippi Code Annotated section 97-3-95(l)(a) (Rev.2006).
¶ 10. At trial, Matthews’s attorneys questioned the investigator, J.C., and Angela about the clothes she had been wearing at the time of the claimed rape. They asked the investigator why he did not do any forensic analysis and questioned Angela about what had happened to her clothes after the incident. J.C. was asked if Angela had her clothes bag with *650 her when he picked her up from Kimberly’s, and J.C. testified that she did.
¶ 11. Defense counsel followed up by asking if there was time for Angela’s mother to have washed the clothes before taking Angela to the sheriffs department. And J.C. testified there would not have been time, because they only briefly stopped at home before picking up Angela’s mother and going to see the investigator.
¶ 12. Though Angela’s mother testified, Matthews’s counsel chose not to ask her if she had washed Angela’s clothes after the incident. Angela’s mother did, however, testify that her daughter’s demeanor changed following the claimed rape and that Angela did not sleep or eat well for a month and was very closed off emotionally. Angela’s best friend also testified that Angela acted differently after she told her about Matthews raping her.
¶ 13. Matthews exercised his right not to testify. The defense rested without calling any witnesses. While the defense submitted several jury instructions, it did not request an instruction about the evi-dentiary value of the clothes Angela had been wearing during the rape. The jury found Matthews guilty of sexual battery. He was sentenced to ten years’ imprisonment, with six years suspended and four years to serve.

III. Post-Trial Motion and Appeal

¶ 14. In his motion for a new trial, Matthews for the first time argued that he had been entitled to a presumption that the evidence Angela “destroyed” — the clothes she had been wearing during the attack — would have been exculpatory. He also for the first time complained the prosecutor improperly referred during closing argument to the rape as Angela’s “first sexual experience,” when there was no evidence it had been her first sexual encounter. Finally, Matthews claimed the jury’s verdict was against the overwhelming weight of the evidence.
¶ 15. After the circuit court denied his post-trial motion, Matthews timely appealed, arguing he was entitled to a new trial for the same three reasons offered in his post-trial motion.[2] We review the denial of a motion for a new trial for abuse of discretion. Powell v. State, 80 So.3d 849, 857 (¶ 22) (Miss.Ct.App.2012) (citing Johnson v. State, 42 So.3d 53, 57 (¶ 14) (Miss.Ct.App.2010)).
Discussion

I. Spoliation of Evidence

¶ 16. Matthews first argues he must be retried because Angela “concealed and destroyed important evidence.” He claims he was entitled to an inference that forensic testing of the clothes Angela had been wearing the night of the attack would have produced exculpatory evidence. But Matthews neither requested the jury be instructed on a spoliation inference nor can he show he was entitled to a spoliation instruction, as he concedes the State did nothing wrong regarding Angela’s clothes. Thus, the circuit court did not abuse its discretion when it denied Matthews’s request for a new trial on this basis.
¶ 17. In support of his evidentia-ry-inference argument, Matthews invokes the “spoliation of the evidence” rule. Under this rule, if a party intentionally spoils or destroys evidence relevant to a case, an inference arises that the spoiled or destroyed evidence would have been unfavorable to that party. Washington v. State, 478 So.2d 1028, 1032 (Miss.1985) (citing 29 Am.Jur.2d Evidence § 177 (1968)). In the *651 criminal context, because the State has a duty to preserve evidence, the State’s intentional, bad-faith destruction of material evidence also violates the defendant’s due-process rights. See Harness v. State, 58 So.3d 1, 4-5 (¶¶ 11-13) (Miss.2011) (discussing development of three-factor test to determine whether defendant’s due-process rights have been violated by State’s failure to preserve evidence); Tolbert v. State, 511 So.2d 1368, 1372-73 (Miss.1987) (addressing defendant’s argument that State, by not sending tissue sample to crime lab, violated his due-process rights by intentionally destroying exculpatory evidence). But here, the State did not violate Matthews’s due-process rights. Matthews concedes that no one in the Lincoln County Sheriffs Department or District Attorney’s Office acted in bad faith when investigating or prosecuting Matthew’s case. Instead, he accuses the victim, Angela, of acting in bad faith by telling the investigator her mother had already washed her clothes.
¶ 18. Matthews asks us to expand the spoliation-of-evidence doctrine and apply it to situations where the government did not act in bad faith. In United States v. Wise, 221 F.3d 140, 156 (5th Cir.2000), the United States Court of Appeals for the Fifth Circuit rejected a similar argument. In that case, the Fifth Circuit held there was no issue of spoliation of evidence when a private computer owner upgraded his operating system, wiping out data relevant to the government’s case against defendants who had threatened using weapons of mass destruction. Id. Because the government did not destroy the computer, which was never in its possession, “there [was] no evidence of bad faith conduct by the government[.]” Id. Thus, the Fifth Circuit held that “the district court properly declined to instruct the jury on the issue of spoliation of the evidence.” Id.
¶ 19. Similarly, here there is no evidence of bad-faith conduct by the State. Matthews acknowledges the State did not conceal or destroy Angela’s clothes, which never came into its possession. So even if Matthews had requested an instruction that the jury infer forensic testing of the clothes would have been exculpatory— which he did not — a spoliation instruction would have lacked evidentiary support.
¶20. Our second reason for rejecting Matthews’s spoliation-of-evidence argument is the fact that he waived it. Unlike the criminal defendant in Washington, the record shows Matthews never requested the jury be instructed to infer that, if it found Angela had intentionally destroyed the shorts, the shorts would have been unfavorable to Angela’s version of events. See Washington, 478 So.2d at 1032-33 (holding the trial court properly rejected the defendant’s proposed instruction that the jury could infer untested tissue samples would have been exculpatory because the defendant failed to show intentional spoliation); see also Wise, 221 F.3d at 156 (holding that, because there was no evidence to support the government’s spoliation of the evidence, the trial court properly refused the defendant’s requested instruction that the jury infer the evidence would have been exculpatory); Murray v. State, 849 So.2d 1281, 1286-87 (¶¶ 20-23) (Miss.2003) (same); Guillen v. State, 825 So.2d 697, 698-99 (¶¶ 4-7) (Miss.Ct.App.2002) (same).
¶ 21. Further, the Mississippi Supreme Court has held that “[a] trial court is not required to sua sponte instruct the jury or suggest jury instructions in addition to what the parties tender.” Wilson v. State, 936 So.2d 357, 363 (¶ 14) (Miss.2006). So the circuit judge had no duty to instruct the jury to consider if Angela had intentionally concealed or destroyed forensic evidence, and if so, to infer that such forensic *652 evidence would have been exculpatory. Consequently, the failure to instruct does not warrant a new trial.
¶ 22. Matthews also claims he was denied “an opportunity to confront his accuser regarding her untruthful statement to the investigator and her unwillingness to have the clothes examined.” This is the same argument made and rejected in Wise — that the “failure to give a spoliation instruction deprived [the defendants] of the opportunity to attack effectively the mishandling of evidence[.]” Wise, 221 F.3d at 156. As did the Fifth Circuit in Wise, we find the fact that no spoliation-of-evidence instruction was given did not mean that Matthews was unable to present his spoliation claim. See id.
¶ 23. At trial, Matthews was given— and took advantage of — the opportunity to challenge the veracity of Angela’s claim that her mother had already washed her clothes. Though Matthew’s attorneys opted not to ask Angela’s mother if she had washed the clothes, they did question Angela, the investigator, and J.C. about the clothes, focusing on why they were not tested, and if Angela’s mother had time to wash them before reporting the rape to the investigator. And during its closing argument, the defense strongly reiterated its theory that Angela lied to the investigator to prevent forensic testing, to conceal that Matthews had not raped her.
¶24. Because no spoliation-of-evidence instruction was requested or required, the jury “could weigh the evidence [concerning the loss of evidence] as presented.” Smith v. State, 835 So.2d 927, 942 (¶ 45) (Miss.2002) (finding no error in denying spoliation-of-evidence instruction where trial judge found State had not intentionally destroyed evidence). We therefore find no error on this issue.

II. Weight of the Evidence

¶ 25. Even without a favorable inference based on spoliation, Matthews claims he is still entitled to a new trial. While he argues the jury’s verdict went against the overwhelming weight of the evidence, we are mindful “the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict. And we “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citation omitted).
¶ 26. Matthews’s weight-of-the-evidence argument essentially attacks Angela’s credibility. He points to other witnesses’ testimony that called into question Angela’s recollection about the time of day she had been raped and her claim that her mother had washed her clothes before taking her to see the investigator. But “issues of weight and credibility of a witness’s testimony are within the sole province of the jury as fact-finder.” Price v. State, 23 So.3d 582, 586 (¶ 17) (Miss.Ct.App.2009) (quoting King v. State, 798 So.2d 1258, 1262 (¶ 14) (Miss.2001)). And here, the jury, as the “the final arbiter of a witness’s credibility,” was free to find credible Angela’s testimony that Matthews had forced himself upon her without her consent. Collins v. State, 97 So.3d 1247, 1251 (¶ 14) (Miss.Ct.App.2012) (quoting Morgan v. State, 681 So.2d 82, 93 (Miss.1996)).
¶ 27. Angela testified that Matthews grabbed her by the wrist, pushed her to the ground, and had non-consensual sex *653 with her. Angela’s best Mend testified that she talked to Angela immediately after, and her distraught friend told her Matthews did not stop when she said no. And Angela’s cousin testified that she fell asleep, leaving Angela alone with Matthews. Viewing the evidence in the light most favorable to the verdict, we do not find the overwhelming weight of the evidence contradicts the jury’s verdict. So the circuit court did not abuse its discretion in denying Matthews’s motion for a new trial.

III. Prosecutorial Misconduct

¶28. Matthews bases his final argument for a new trial on a claim of prosecu-torial misconduct.
¶ 29. During closing argument the State mentioned that Angela had to tell the investigator “about her first sexual experience.” This comment was made in the context of arguing that Angela had no motive to lie about being raped:
What was her motive for saying this? What would she have to gain by this? I’ll tell you what she did gain by this. She gained sleepless nights. She gained the inability to eat. She gained stomachaches. She distanced herself from her family and from her best friend in the aftermath of this. Not only that, she got to sit and talk with [the sheriffs department investigator], who [sic] she never met before. But still, she had to sit there and tell him about her first sexual experience. She is still upset about this. On top of that, the other thing it gained her was a ticket to that chair in this courtroom. She doesn’t know y’all. She doesn’t know, probably, anybody sitting out back there. And she’s having to tell y’all about it.
Matthews insists this argument was unfair because no evidence had been offered that this incident was Angela’s first sexual experience. See Ross v. State, 954 So.2d 968, 1002 (¶ 74) (Miss.2007) (citations omitted) (“Arguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial.”).
¶30. But Matthews admits he did not contemporaneously object to the comment during trial. So appellate review of this issue is waived.[3] See id. at 1001 (¶ 71) (holding “failure to object to the prosecution’s statements in closing argument constitutes a procedural bar”); see also Dampier v. State, 973 So.2d 221, 234-36 (¶¶ 38-40) (Miss.2008) (holding argument that prosecutor made comments that were unsupported by the evidence was procedurally barred because defendant did not object); Havard v. State, 928 So.2d 771, 791 (¶¶ 33-35) (Miss.2006) (same).
¶ 31. Our supreme court has held that “in extreme cases, a failure to object to questions [that] were violative of a constitutional right will not act as a procedur *654 al bar to consideration.” Dampier, 973 So.2d at 235 (¶ 39) (quoting Ross, 954 So.2d at 1002 (¶ 71)). But we do not find the comment so extreme as to require reversal, such as when a prosecutor’s comment infringes on a defendant’s constitutional right not to testify. See, e.g., Griffin v. State, 557 So.2d 542, 552 (Miss.1990) (citations omitted). We instead find this case to be like Dampier, where the procedural bar remained intact. Dampier, 973 So.2d at 236 (¶ 40) (concluding “that Dam-pier’s failure to object to the now-disputed comments in closing argument creates a procedural bar, as those comments did not infringe upon Dampier’s constitutional rights”).
¶ 32. To be considered plain error, the substance of a closing argument must not only be “out of bounds for closing argument,” Boyd v. State, 977 So.2d 329, 337 (¶ 34) (Miss.2008) (quoting Minor v. State, 831 So.2d 1116, 1123 (¶ 23) (Miss.2002)), but also infringe upon a defendant’s constitutional rights, Dampier, 973 So.2d at 236 (¶ 40). See also Mitchell v. State, 21 So.3d 633, 642 (¶¶ 31-32) (Miss.Ct.App.2008).
¶ 33. The prosecutor’s boundaries in closing arguments are “wide” — “extending] not only to the facts presented in evidence, but also to deduction and conclusions he may reasonably draw therefrom, and the application of the law to the facts.” Dampier, 973 So.2d at 235-36 (¶ 39) (quotations and citations omitted). Though Angela did not testify she had never had sex before the encounter with Matthews, her best friend’s testimony could be viewed as indicating Angela lacked the sexual experience to describe what had happened. Also, the comment was made in the context of how Angela had suffered physically and emotionally since the assault, a fact established through the testimony of Angela’s mother and Angela’s best friend.
¶34. But assuming the comment was out of bounds, we still must consider the prosecutor’s remarks “in light of the entire trial,” not in isolation. Havard, 928 So.2d at 791 (¶ 35) (citing Byrom v. State, 863 So.2d 836, 872 (¶ 123) (Miss.2003)). And in doing so, we find this lone isolated comment does not rise to the level of prosecu-torial misconduct so extreme as to violate Matthews’s constitutional right to a fair trial. Cf. id. (finding no reversible error in prosecutor’s allegedly unsupported comment that defendant may have previously abused capital-murder victim when such comment was viewed in light of entire trial).
¶ 35. For these reasons, we find the circuit court did not abuse its discretion when it denied Matthews’s motion for a new trial. We therefore affirm Matthews’s conviction and sentence.
¶ 36. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SIX YEARS SUSPENDED AND FOUR YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,500 AND RESTITUTION OF $500 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. *655 BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Angela is a fictitious name, used to protect the identity of the minor victim.

. Matthews has remained free on bond pending the outcome of this appeal.

. Matthews first challenged the prosecutor’s statement in his motion for a new trial. The Mississippi Supreme Court has held that, "if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for new trial.” Hughes v. State, 90 So.3d 613, 623 (¶ 25) (Miss.2012) (quoting Page v. State, 64 So.3d 482, 489 (¶ 29) (Miss.2011)). "But 'raising objections in a motion for new trial which should have been made at trial has never been thought to cure the failure to object at the proper time.’ ” Id. (quoting Smith v. State, 797 So.2d 854, 856 (¶ 7) (Miss.2001)). Instead, "[i]t is axiomatic that a litigant is required to make a timely objection^ and] ... if no contemporaneous objection is made, the error, if any, is waived.” Smith, 797 So.2d at 856 (¶ 7) (citing Walker v. State, 671 So.2d 581, 597 (Miss.1995)). So Matthews’s raising this issue in his post-trial motion did not undo his waiver. See Hughes, 90 So.3d at 623 (¶ 25).