# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01733-COA

**JIMMY DALE REID A/K/A JIMMY DALE REID, JR. A/K/A JIMMY REID A/K/A JIMBO REID**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2019 |
| TRIAL JUDGE: | HON. TONI DEMETRESSE TERRETT |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/13/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. While incarcerated in a Warren County jail, Jimmy Dale Reid was charged with three counts of possessing contraband (cell phones). A Warren County Circuit Court jury convicted Reid of all counts. The trial court sentenced Reid to serve three consecutive five-year sentences in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender under Mississippi Code Annotated section 99-19-81 (Supp. 2018).[1] After

---

[1] The court also ordered Reid to pay a $3,000 fine, court costs in the amount of $104.00, and $280.50 in state assessments.

the trial court denied his posttrial motion, Reid appeals, alleging the court erred in allowing (1) hearsay testimony by investigators that they received a tip that Reid had contacted a State's witness through Facebook messenger, and (2) impeachment testimony of Reid's alleged gang membership. Although we agree that the investigators' testimony regarding the informant's contact with Reid through Facebook constituted inadmissible hearsay, we find that allowing the testimony amounts to harmless error. We find no error in the admission of rebuttal testimony to impeach Reid regarding his gang affiliation. Accordingly, we affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2.    Chris Satcher, an investigator with the District Attorney's Office, received a tip that Reid, an inmate in the Warren County jail, was in possession of a cell phone. Specifically, a State's witness in another matter told Satcher that Reid had sent him or her a Facebook message. Satcher contacted Investigator Stacy Rollison of the Warren County Sheriff's Office, and on September 18, 2018, the two investigators went to the jail to search Cell Block C, where Reid was confined. Cell Block C, which houses approximately twenty-five inmates, consists of a common "Day Room," several four-man cells, as well as Cell Number 3, an individual one-man cell. According to Satcher, the inmates were "assigned a cell block but not a specific bed." The investigators discovered three cell phones in Cell Number 3.[2]

---

[2] Although not attributed to Reid, the investigators also found three more cell phones in the Day Room.

Also retrieved from under the mattress in Cell Number 3 was a folder containing some of Reid's personal items (i.e., mail, medical prescription documents/packaging, and discovery documents from a pending case).

¶3.     Reid was charged with three counts of possessing contraband.[3]  A jury trial was held October 14-15, 2019.  Satcher testified that when he first entered Cell Block C, he made eye contact with Reid, who was standing on a catwalk.  He yelled at Reid, who complied with Satcher's instructions to go to the Day Room with the other inmates while the search was being conducted.  Satcher testified about how the jail's phone system worked and how he was able to access phone calls made by Reid on September 19, the day after the search.  Satcher said the recordings revealed Reid "advising, with who[m]ever he was talking to then, to log him out of his Face Book account" and change his password.  Also, "[a]ccording to the audio[,] [Reid] said, I just got my cell phone and I was spoiled rotten."  Satcher testified regarding another phone call Reid made that afternoon, noting, "[Reid] had just gotten a brand new phone, just changed his password the other day, the female that he was talking to described about sixty[-]something accounts that were logged out of and some reference to, I was spoiled rotten by my cell phone."  Lastly, Satcher remarked that in reference to the cell phone, Reid commented on the audio recording that "they came in my cell and found that s**t.  And then at the end, I've got to have communication in this b*tch."

---

[3] Reid was being held on charges for murder and for possession of a firearm by a felon.  He was subsequently convicted for the firearm offense and the lesser crime of manslaughter.

¶4. Rollison testified that when Satcher contacted her regarding the informant's tip, they went to Cell Block C and had all the inmates leave their cells and go to the Day Room. When they got to Cell Number 3, she noticed a tampered electrical outlet with cords hanging from it; one cord was going to a cell phone located on the sink and another to a cell phone hidden in a sock. Another phone was discovered hidden in a Bible. Rollison said there were personal letters addressed to Reid in the cell, as well as some of his legal documents.

¶5. Reid's mother, Marsha, testified for the defense, stating that when he was booked into jail, she picked up his belongings including a cell phone. She said that to her knowledge, she never received a call from Reid from a cell phone while he was incarcerated. Reid also testified, denying that he had accessed his Facebook account from jail. He claimed that he normally slept in the Day Room and that he did not have "seniority" to have an individual one-man cell, noting he was not in any "little clicks" (sic). Reid did not know how his personal items ended up in Cell Number 3 and insinuated that another inmate had taken his stuff. Reid did acknowledge that he had contacted his best friend the day after the search and asked him to change his password on Facebook. He said his friend told him that there had been fifty to sixty logins to the account and that someone had logged on three hours earlier. Reid also admitted to calling his girlfriend and discussing the contraband charges, but he continued to deny that he possessed the cell phones.

¶6. On cross-examination, the State questioned Reid regarding any prior gang involvement, which he denied. No objection was made by the defense. However, after the

4

State inquired about the meaning of Reid's teardrop tattoos on his face, the defense objected, asserting the testimony was not relevant and a violation of Mississippi Rule of Evidence 404. The trial court instructed the jury to disregard the line of questioning. After the defense rested, the State asked to bring in a rebuttal witness, Shelly McTeer, an MDOC probation officer, for the purpose of impeaching Reid's testimony that he was never a member of the gang called the Simon City Royals. Over defense counsel's objection, the trial court allowed McTeer to testify regarding any data records the MDOC collected in that regard. McTeer said that when someone enters prison, the MDOC collects information, including gang affiliation. McTeer was familiar with Reid, and she testified that he had been given a classification as a member of the Simon City Royals. Defense counsel objected on the basis of hearsay, which the court overruled. Reid was allowed to take the stand in surrebuttal, and although he admitted being "familiar" with the gang, he denied being a member. He said McTeer was "mistaken."

¶7.    Reid was convicted of all three counts and sentenced as a habitual offender to three consecutive five-year sentences in the custody of the MDOC. He filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, alleging the court erred in "overruling the objections of the defendant during the trial, especially the objections to hearsay made by the witnesses for the State regarding alleged statements of the defendant." The trial court denied the motion, and, aggrieved, Reid appeals.

## DISCUSSION

¶8.     Both assignments of error brought by Reid concern the trial court's decision to allow certain testimony that Reid claims prejudiced his defense.  We employ an "'abuse of discretion' standard" with regard to "the admissibility of trial testimony." *Butler v. State*, 300 So. 3d 550, 555 (¶14) (Miss. Ct. App. 2020).  "[A] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence[.]" *Id.* (quoting *Corrothers v. State*, 148 So. 3d 278, 310 (¶76) (Miss. 2014)).  Therefore, "unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Id.*

**I.     Whether the trial court erred in allowing testimony that Reid had contacted a State's witness through Facebook from jail.**

¶9.     At trial, Satcher testified that the tip he received regarding Reid's alleged possession of a cell phone was from a State's witness who had gotten a Facebook message from Reid. Defense counsel objected to the testimony as hearsay, and the trial court overruled the objection.  Later, Rollison testified that Satcher told her about the tip from the witness who Reid had contacted through Facebook.  This testimony was also admitted over objection by the defense.

¶10.     Reid argues that the admission of this hearsay testimony by Satcher and Rollison—"that Reid allegedly contacted a State's witness from jail through Facebook[—]prejudiced [his] case by implying that he had possessed and used a cell phone in jail."  Hearsay is defined as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c).  "Hearsay is not admissible except

6

as provided by law." M.R.E. 802.

¶11.    The State argues that this testimony was admissible because it showed "why the officers conducted a search of Reid's cell block." As this Court has recognized, "our caselaw holds that 'an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time.'" *Butler v. State*, 292 So. 3d 251, 257 (¶16) (Miss. Ct. App. 2019) (quoting *Swindle v. State*, 502 So. 2d 652, 657-58 (Miss. 1987)).    The testimony regarding the substance of the informant's tip did indeed explain why the officers conducted the search of Cell Block C.  However, we agree with Reid that this testimony was also offered to prove the matter of the truth asserted—that Reid possessed a cell phone while in custody—because without the cell phone, he could not have accessed Facebook while incarcerated.

¶12.    Nevertheless, because Reid's defense was not prejudiced by this testimony, we find the admission of the testimony amounts to harmless error.  "The standard for harmless error is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Moffett v. State*, 49 So. 3d 1073, 1099 (¶85) (Miss. 2010) (quoting *Brown v. State*, 995 So. 2d 698, 704 (¶25) (Miss. 2008)).  Here, the evidence of Reid's personal belongings in the jail cell where the phones were found (e.g., personal mail and legal documents pertaining to other charges against Reid), in addition to the recordings of his phone calls the following day referencing a cell phone, provided sufficient evidence that Reid possessed the cell phones in question.  Accordingly, we find the court did

not commit reversible error on this issue.

## II.     Whether the trial court erred in allowing the State to impeach Reid regarding his alleged gang membership.

¶13.    The State asked Reid on cross-examination if he was or ever had been "a member of the street gang that goes by the name of Simon City Royals." Reid replied, "No, sir." After Reid had finished testifying, the State asked to call McTeer, a probation officer, as a rebuttal witness for purposes of impeachment, claiming that Reid "committed perjury" when he said he was not affiliated with a gang. The State argued that McTeer could "testify that according to the records of the [MDOC], that [Reid] was a member of the Simon City Royals, that he has, himself, reported that." The defense objected as to relevance and as to the MDOC record's authentication. The trial court allowed McTeer to take the stand only to verify that the MDOC's records indicated Reid said he was affiliated with the Simon City Royals. McTeer, who had "dealt with [Reid] in the past," testified that Reid had been given a classification as being in a gang in 2018 based on the MDOC's records. Defense objected on the basis of hearsay. Reid took the stand in surrebuttal, denying involvement in any gang.[4]

_____

[4] Although not specifically raised by Reid as an issue on appeal, he does note the State's inquiry about Reid's facial tattoos during cross-examination, wherein Reid explained he had two teardrop tattoos below each eye, "[o]ne for my grandmother and for my grandfather." Defense counsel made no objection to these questions. Defense counsel did object as to relevance when the State asked Reid whether "it was his understanding that when a person has a ta[tt]oos underneath their eye is that they've killed someone," and the trial court immediately instructed the jury "to disregard the questions which were just immediately asked and any response that [they] may have heard." *See Campbell v. State*,

¶14. Reid argues that the State failed to provide any "evidence that Reid's alleged gang affiliation was in any way linked to the charge that he possessed a cell phone in jail." He further claims that "[t]he State's impeachment of Reid with his alleged gang membership was also improper because it concerned a matter collateral to the charge at issue." The State contends that the defense has waived this issue because no objection was raised when the State initially asked Reid if he belonged to a gang. The State also responds that Reid "opened the door for impeachment" because he claimed on direct examination that he did not belong to any cliques; so the State inquired about possible gang involvement in an effort to impeach that testimony.

¶15. Addressing the relevance of Reid's gang affiliation, we note that the State had presented evidence during its case-in-chief that Reid was housed in the one-man cell where the phones were found by way of his personal belongings. Reid "opened the door" on direct

---

750 So. 2d 1280, 1283 (¶13) (Miss. Ct. App. 1999) ("recogniz[ing] the existence of an abundance of case law that presumes that members of the jury follow the instructions of the court"). Reid also notes in his brief that the State made the following remarks during closing arguments:

> He got on the witness stand and said, I am not a member of a gang. I've never been a member of a gang. He's got band-aids covering his, like he told you, covering his tear drop ta[tt]oos. Why does he have that? You all know why. He is a member of a gang.

Because the defense did not object to these remarks at trial, we find any issue with regard to the State's comments during closing arguments would be waived. *See Matthews v. State*, 132 So. 3d 646, 653 (¶30) (Miss. Ct. App. 2014) (finding defendant's failure to object contemporaneously to prosecutor's comments during closing argument waived the issue on appeal).

9

examination by offering exculpatory testimony regarding the "clicks" in the jail and how he did not have seniority to be in the one-man cell where the phones were found. The Mississippi Supreme Court has held, "Where an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination." *Robinson v. State*, 247 So. 3d 1212, 1231 (¶44) (Miss. 2018) (quoting *Stewart v. State*, 596 So. 2d 851, 853 (Miss. 1992)). Here, the State attempted to impeach Reid's direct testimony on cross-examination when the prosecutor asked Reid if he was or had been involved with a gang. Since no objection was made by the defense to this particular line of questioning, any issue with regard to this particular testimony is waived. *See Giles v. State*, 282 So. 3d 519, 525 (¶14) (Miss. Ct. App. 2019) ("The failure to object to testimony at trial waives any assignment of error on appeal.") (citing *Manning v. State*, 269 So. 3d 216, 220 (¶15) (Miss. Ct. App. 2018)).

¶16. Further, when asked by the State on cross-examination if he belonged to a gang, Reid emphatically replied, "No, sir." Arguing to allow rebuttal testimony for impeachment purposes, the State contended:

> [Reid] actually lied on the witness stand and it is imperative to our case to show that he lied. . . . Because he has a gang connection and it is important. The man commits - - if he says he is not in a gang and we've got a record that shows that he is. We should be allowed to present that to the [c]ourt.

Our supreme court has recognized:

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an

10

obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

*Wallace v.* State, 466 So. 2d 900, 905 (Miss. 1985) (quoting *Harris v. New York*, 401 U.S. 222, 225-26 (1971)). Because the State offered rebuttal testimony regarding the MDOC's records only to impeach Reid's perjured testimony that he was not involved with a gang, we find no error in the court's decision to allow McTeer to take the stand and testify.

¶17. **AFFIRMED.**

   **CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**